**Oscar SALAS–VELAZQUEZ and Sharron Libby Salas–Velazquez, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 93–2965.**

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1994.

Decided Sept. 12, 1994.

---

Robert A. Dildine, Minneapolis, MN, argued, for appellant.

Alexander H. Shapiro, Washington, DC, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, LIVELY,* Senior Circuit Judge, and FAGG, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Oscar Salas–Velazquez, whom we shall call "petitioner," asks us to review an order of the Board of Immigration Appeals directing that he be deported. Petitioner unsuccessfully asked the Board for three forms of relief to prevent his deportation to Mexico, his country of origin: an adjustment of status, under which he would receive an immigrant visa; a waiver of deportability; and a suspension of deportation. The Board denied all three forms of relief. We believe that the law constrains us to affirm.

I.

Petitioner is a native and citizen of Mexico. He originally entered the United States as a visitor for pleasure. (As we shall see later, there is a dispute as to the time of his initial entry.) Petitioner purported to marry a citizen of the United States, and, on the basis of this alleged marriage, filed a petition to adjust his status to that of a permanent resident alien. This petition was denied in 1989 on the ground that the marriage was fraudulent, entered into for the purpose of evading the immigration laws. Almost two years later, in 1991, the Immigration and Naturaliza-

* The Hon. Pierce Lively, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

tion Service served petitioner with an order to show cause, charging him with deportability.

A hearing was held before an immigration judge, during which petitioner made a motion for adjustment of status based on a second marriage, also to a United States citizen. There is no dispute as to the genuineness of the second marriage. The immigration judge denied this motion. Later, the judge found that petitioner's first marriage was fraudulent, that petitioner and his first wife never lived together, and that petitioner contracted the marriage for the purpose of immigrating to the United States. On the basis of this evidence, the judge sustained the charges of deportability.

Petitioner then moved for suspension of deportation, claiming seven years' physical presence in the United States, that he had good moral character, and that his deportation would cause extreme hardship to his citizen wife and their children born in this country. The judge denied this motion also, finding that petitioner had not proved seven years' physical presence, and that the hardship that would result to his citizen family from his deportation to Mexico would not be "extreme."

Petitioner also asked for a waiver of deportability under Section 241(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(H). This form of relief was also denied, on the basis, which we shall discuss more fully later in this opinion, that the cited section did not apply to the grounds of deportability with which petitioner was charged.

On appeal to the Board of Immigration Appeals, the decision of the immigration judge was affirmed in all respects. (The Board did reach a different conclusion from the immigration judge with respect to petitioner's good moral character, but, as we shall explain later, that difference is not material.) Petitioner did not contest the conclusion of deportability as such. He limited himself to requesting the three forms of relief that we have described. Therefore, having denied these kinds of relief, the Board entered a final order of deportation. This petition for review followed.

## II.

■ We address first petitioner's request for an adjustment of status. He asks, on the basis of his unquestionably valid present marriage to a citizen of the United States, that his status be adjusted to that of a permanent resident alien. Under Section 245(a) of the Act, 8 U.S.C. § 1255(a), the Attorney General, in her discretion, may grant this form of relief if the alien applicant meets certain statutory requirements. Among other things, the alien must be eligible to receive an immigrant visa, and "an immigrant visa [must be] immediately available to him at the time his application is filed." The Board concluded that petitioner cannot meet this standard, because Section 204(c) of the Act, 8 U.S.C. § 1154(c), provides that no petition for immigrant status may be approved

> if ... the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as a spouse of a citizen of the United States ... by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws....

The Board found that petitioner's first marriage was entered into for the purpose of procuring his entry as an immigrant, and concluded, accordingly, that his petition for adjustment of status was barred by Section 204(c).

There is no question that petitioner entered into his first marriage for the purpose of obtaining immigration benefits. He concedes as much. This is not the same thing, he argues, as evasion of the immigration laws. It is merely avoidance. We can understand that a person could contract a marriage with the knowledge that immigration benefits would result and for the purpose of obtaining such benefits, at least partly, without the transaction's being considered an evasion. In this case, however, the marriage was not a real marriage. Petitioner and his first wife never lived together, and never intended to. The sole purpose of the arrangement was to enable petitioner to obtain

an adjustment of his immigration status. This is evasion, and the Board did not err in so holding.

■ Petitioner points to Section 212(i), 8 U.S.C. § 1182(i), under which, he says, his inadmissibility could be waived. In our view, the unequivocal and express language of Section 204(c) is a specific provision that overrides the general availability of relief under Section 212(i). Section 204(c) appears to preclude the exercise of any discretion. Petitioner argues that the Commissioner of the Immigration and Naturalization Service, in *Matter of Da Silva,* 17 I & N Dec. 288 (Comm'r 1979), approved a visa petition under Section 212(i) for an alien who had previously entered into a fraudulent marriage for the purpose of gaining entry into the United States. At the time that *Da Silva* was decided, however, Section 204(c) applied only to those aliens who had actually obtained a visa by virtue of a fraudulent marriage. The Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99–639, 100 Stat. 3537, expanded Section 204(c) to include within its ban not only those who had actually obtained visas by virtue of fraudulent marriages, but also those who had merely attempted to obtain them. There is an argument that petitioner in the present case actually did, for a short time, obtain preferred status by virtue of his first marriage, but we need not pursue that refinement here. It is undeniable that he at least *attempted* to attain such status, and that is sufficient to bring him within the bar of Section 204(c). In reaching this conclusion about the interplay between Sections 204(c) and 212(i), we are mindful that we owe some deference to the Board of Immigration Appeals' Interpretation of the Immigration and Nationality Act. See *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The Board made no error of law when it denied petitioner's request for adjustment of status under Section 245(a).

### III.

■ Petitioner next claims that the Board erred in denying him a waiver of deportability under Section 241(a)(1)(H), 8 U.S.C. § 1251(a)(1)(H). Under this provision, the Attorney General may waive certain provisions relating to the deportation of aliens, but this power exists only when deportation is going to take place on the ground that the aliens "were excludable at the time of entry as aliens described in [Section 212(a)(6)(C)(i) ]." Excludability at the time of entry is not the sort of ground of deportation that is being asserted against this petitioner. Rather, it is an event occurring after entry, namely his fraudulent first marriage, that has made him deportable. The original entry, as a visitor for pleasure, was valid. Petitioner was not excludable at that time. No fraud was committed at the time of entry. The fraud came later. Therefore, by the express words of Section 241(a)(1)(H), petitioner is not eligible for a waiver of deportability.

### IV.

■ Petitioner also requests a suspension of deportation. This form of relief is available under Section 244(a)(1), 8 U.S.C. § 1254(a)(1). The Attorney General may, in her discretion, suspend deportation if a petitioner shows physical presence in this country for seven continuous years immediately preceding the date of his application, that he has good moral character, and that his deportation would cause extreme hardship. The immigration judge held that petitioner had not proved that he had been present for seven continuous years in the United States. The judge also took the view, because of petitioner's fraud in connection with his first marriage, that petitioner was not of good moral character. Finally, he concluded that the hardship that would result to petitioner's citizen family from his deportation would not be "extreme." On appeal, the Board disagreed with the immigration judge on the element of good moral character. Fraud does not disqualify a person from having good moral character within the meaning of the statute, the Board said, unless the fraud occurs during oral testimony under oath, which was not the case here. (Petitioner's misrepresentations were in writing.) Nonetheless, the Board agreed with the immigration judge with respect to the continuous-

physical-presence requirement and the extreme-hardship requirement, and so denied the suspension of deportation.

Petitioner points out that, whatever the situation may have been at the time of the hearing before the immigration judge, he has now unquestionably been physically present in this country for seven continuous years. Thus, he argues, he need show only "extreme hardship" in order to qualify for a waiver of deportability. Assuming for present purposes that this is so, we still believe that we are obliged to affirm the decision of the Board.

The term "extreme hardship," necessarily, has no fixed quantitative content. Its definition is a matter of judgment, which inevitably is somewhat subjective. See *Hernandez–Cordero v. Immigration and Naturalization Service*, 819 F.2d 558 (5th Cir.1987). The interpretation of the term is committed to the agency's discretion. *Immigration and Naturalization Service v. Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). Petitioner argues that his citizen wife would not go with him to Mexico. The country and language are not familiar to her. She and the children would stay in this country, thus producing severe emotional harm to themselves, as well as to petitioner himself. We have no doubt that this is "hardship," and, if we were viewing the matter *de novo,* it is possible that we would also conclude that it is "extreme." The Board, however, pointed out that petitioner's wife, at the time of the second marriage, was well aware of his immigration history and difficulties. She had to know that there was a risk of his being deported. In the Board's view, this makes the consequent hardship less than "extreme," presumably because it is partly the parties' own fault. The argument breaks down as to the children, who did not even exist at the time that the second marriage was contracted, but it has a certain amount of validity with respect to the petitioner himself and his wife. We believe it is within the Board's discretion to consider this factor in fleshing out the meaning of the term "extreme," and that this discretion was not abused in the present case. We observe, in addition, that it is of course a matter of petitioner's wife's

own choice that the family will be separated by his departure to Mexico. She could go with him, and take the children, if she wanted to.

## V.

Petitioner also asks us, in the alternative, to instruct the Board to allow him to depart from the country voluntarily. Petitioner asked for voluntary departure before the immigration judge, but the judge denied this relief, finding him not to be of good moral character. The Board, for reasons we have described, disagreed with this finding, but did not rule on petitioner's request for voluntary departure because he did not urge this form of relief before the Board. For the same reason, we do not reach this issue. We normally do not decide questions that were not properly raised below. We express no view on whether the Board would be able or willing to reconsider the request for voluntary departure in view of the fact that all of petitioner's attempts to secure relief against deportation have now been held without merit.

The order of the Board of Immigration Appeals is

Affirmed.