Oscar Salas **VELAZQUEZ,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Carl Houseman, District Director, St. Paul, Minnesota District, Respondent.**

Civ. No. 3–95–001.

United States District Court,
D. Minnesota,
Third Division.

Feb. 6, 1995.

Michael H. Davis, Ingber and Aronson, P.A., Minneapolis, MN, for petitioner.

Mary Trippler, Asst. U.S. Atty., Minneapolis, MN, for respondent.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter is before the Court on Petitioner Oscar Salas Velazquez's ("Velazquez") Amended Petition for Writ of Habeas Cor-

pus.[1] Velazquez has been ordered to surrender himself to Respondent, the United States Immigration and Naturalization Service ("INS"), for deportation to Mexico. Velazquez seeks to bar his deportation. He claims the INS unlawfully denied his Petition for an Extreme Hardship Waiver brought pursuant to Section 216(c)(4)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1186a(c)(4)(A), and that he was denied effective assistance of counsel throughout his final deportation hearing and subsequent appeals to the Board of Immigration Appeals ("BIA") and the Eighth Circuit Court of Appeals. In his Amended Petition for Writ of Habeas Corpus, Velazquez requests an order (1) declaring him eligible to apply for a Section 216(c)(4)(A) hardship waiver, (2) directing the INS to reopen his deportation case and process his Section 216(c)(4)(A) application, and (3) enjoining the INS from deporting him pending final resolution of that application. A hearing on the merits of Velazquez's Amended Petition for Writ of Habeas Corpus was held before this Court on January 30, 1995. This Memorandum Opinion and Order follows.

### Background

Velazquez is a citizen of Mexico and a native of Mexico City. He originally entered the United States in November, 1984, as a visitor for pleasure. On October 1, 1986, he "married" Jennifer Brady, a citizen of the United States. On the basis of this marriage, he was, on January 28, 1987, granted status as a "conditional resident" which was valid until January 27, 1989. On January 31, 1989, he filed a petition to adjust his conditional resident status to that of a permanent resident alien pursuant to INA Section 216(c)(1), 8 U.S.C. § 1186a(c)(1). This petition was denied on June 30, 1989, on the ground that his marriage to Jennifer Brady was fraudulent and entered into for the purpose of evading immigration laws. Velazquez does not currently dispute that finding, and has admitted his first marriage was a "sham" marriage.

During the period of Velazquez's "sham" marriage, Velazquez began a bona fide romantic relationship with Sharron Libby, also a United States citizen. On April 20, 1990, Velazquez and Ms. Libby were lawfully married. They currently have two children, ages two and four, and reside in Plymouth, Minnesota. There is no dispute as to the genuineness of this second marriage.

On May 21, 1991, nearly two years after his petition for permanent resident status was denied, the INS issued an Order to Show Cause seeking Velazquez's deportation on the grounds that (a) his conditional resident status had expired and (b) he had procured his entry into the United States on the basis of a fraudulent marriage. Velazquez contested his deportability and moved for various forms of relief, including an adjustment of resident status based on his second marriage. The Immigration Judge denied Velazquez's motions.

The INS subsequently conducted a deportation hearing before an Immigration Judge on February 11, 1992. The Immigration Judge determined that Velazquez's first marriage was fraudulent and ordered that he be deported. (Respondent Opp. Mem., Ex. A at 139–166.) During this hearing, Velazquez also filed a Petition for Suspension of Deportation pursuant to INA Section 244(a)(1), 8 U.S.C. § 1254(a)(1), claiming that he had resided in the United States for over seven continuous years, that he had good moral character, and that his deportation would cause extreme hardship to himself, his citizen wife, and their two citizen children. (Amend. Pet. for Writ of Habeas Corpus, Ex. A.) The Immigration Judge denied that Petition.

Velazquez appealed the Immigration Judge's decision to the BIA. On June 25, 1993, the BIA affirmed the Immigration Judge's decision and entered a final Order of Deportation. Accordingly, on July 27, 1993, the INS issued a warrant for Velazquez's arrest and deportation.

---

1. Velazquez also filed a Motion for Temporary Restraining Order and Preliminary Injunction in this matter. During argument, however, the parties agreed to submit the Amended Petition for Writ of Habeas Corpus to the Court for final resolution on its merits. For the reasons provided herein, Velazquez's Motion for Temporary Restraining Order and Preliminary Injunction will be denied as moot.

Following the BIA's final decision, Velazquez filed a petition for review with the Eighth Circuit Court of Appeals. On September 12, 1994, the Court of Appeals affirmed the BIA's decision. *Salas Velazquez v. I.N.S.*, 34 F.3d 705 (8th Cir.1994). Velazquez was arrested by INS agents on December 7, 1994. He was thereafter released on a $5,000.00 immigration bond and ordered to report for deportation to Mexico on January 4, 1995.

Velazquez has now retained new legal counsel who argues that Velazquez received ineffective assistance of counsel throughout his immigration proceedings. Pursuant to the advice of his new counsel, Velazquez filed, on December 27, 1994, a Petition to Remove the Conditions on Residence based on an "extreme hardship" provision contained in INA Section 216(c)(4)(A), 8 U.S.C. § 1186(c)(4)(A). (Pet. for Writ of Habeas Corpus, Ex. 2.) On December 29, 1994, the INS District Director denied this Petition, (*Id.*, Ex. 1), concluding that Velazquez was "not eligible to file for removal of conditions as set forth in Section 216 of the [INA]," that "[a]fter careful review of the entire record, it is concluded that there are not sufficient equities to overcome [Velazquez's] extremely serious immigration violations," and that "even if [Velazquez was] eligible to file this [Section 216(c)(4)(A) ] petition, it is concluded that persuasive evidence of *extreme* hardship has not been introduced in this proceeding." (*Id.* at 5, 10, 8.)

On January 3, 1995, Velazquez filed a Petition for Writ of Habeas Corpus accompanied by a Motion for a Temporary Restraining Order and Preliminary Injunction in this Court seeking to enjoin his deportation and to order the BIA to process his hardship waiver application. The INS has agreed to defer Velazquez's deportation until the earlier of March 15, 1995, or this Court's ruling on the pending Motion and Petition.

On January 20, 1995, Velazquez filed a motion with the BIA seeking to reopen deportation proceedings. (Petitioner's Reply Mem., Ex. A.) In this Motion, Velazquez requests review of his hardship waiver application and reconsideration of his application for suspension of deportation based on allegedly new and substantial evidence of extreme hardship as well as his claim of ineffective assistance of counsel. (*Id.*)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 2241.

### Discussion

■ Velazquez seeks a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241–2255 to enjoin his deportation. Challenges to deportation proceedings are cognizable under the federal habeas statute. 8 U.S.C. § 1105a(a)(10) ("any alien held in custody [2] pursuant to an order of deportation may obtain judicial relief thereof by habeas corpus proceedings"). In order to succeed on the merits of a habeas petition, Velazquez must demonstrate that the current (or impending) restraint on his liberty is in violation of federal law. 28 U.S.C. § 2241.

■ In this case, Velazquez predicates his habeas petition on two grounds. First, he asserts that his Fifth and Sixth Amendment [3] rights were violated during his deportation proceedings, contending that the acts and omissions of his counsel during these proceedings, including the failure to file a Section 216(c)(4)(A) hardship waiver, constituted ineffective assistance of counsel. Second, Velazquez contends that the INS District Director's denial of his December 27, 1994 hardship waiver petition was arbitrary, capricious, and an abuse of discretion.

### I. Jurisdiction

■ The INA specifically limits federal jurisdiction to reconsider INS final decisions.

---

2. Where an order of deportation is outstanding, as in the present case, the "custody" requirement for habeas corpus jurisdiction is satisfied. *See Ijoma v. I.N.S.*, 854 F.Supp. 612, 616 n. 10 (D.Neb.1993) (citing cases).

3. Deportation hearings are deemed civil proceedings and thus aliens have no constitutional right to counsel under the Sixth Amendment; however, courts have recognized that counsel at a deportation hearing may be so ineffective as to have impinged upon the fundamental fairness of the deportation hearing in violation of the Fifth Amendment Due Process Clause. *Castaneda–Suarez v. I.N.S.*, 993 F.2d 142, 144 (7th Cir. 1993).

Federal district courts do not have subject matter jurisdiction to review final deportation orders. Instead, the Courts of Appeal are vested with exclusive jurisdiction to review decisions made during a deportation hearing. 8 U.S.C. § 1105a(a); *Stajic v. I.N.S.,* 961 F.2d 403, 404 (2nd Cir.1992); *JAA v. I.N.S.,* 779 F.2d 569, 571 (9th Cir. 1986); *see also Wellington v. I.N.S.,* 710 F.2d 1357, 1360 (8th Cir.1983) (explaining that the Court of Appeals has "exclusive jurisdiction over final orders of deportation, orders entered during deportation proceedings, and orders incident to a motion to reopen such proceedings").

▮ In his Amended Petition, Velazquez claims he was denied effective assistance of counsel at his deportation hearing and subsequent appeals. Velazquez alleges that his prior counsel failed to adequately develop a record of extreme hardship and failed to file the proper hardship waiver application during his final deportation hearing.[4] Velazquez claims his due process rights were violated through these omissions.

Velazquez cannot challenge his final deportation hearing and its appeal in this Court. In order to prevail on an ineffective assistance of counsel claim, Velazquez must show his deportation hearing was fundamentally unfair because of his counsel's deficient representation. *Castaneda–Suarez v. I.N.S.,* 993 F.2d 142, 144 (7th Cir.1993). As noted, however, in order to expedite final deportation proceedings, Congress has placed review of final deportation orders, and orders entered during those proceedings, with the Courts of Appeal. This Court therefore does not have subject matter jurisdiction to review Velazquez's ineffective assistance of counsel

claim insofar as it relates to the BIA's final deportation order.[5]

▮ Velazquez's claim that the INS District Director wrongfully denied his petition for an extreme hardship waiver is, however, properly before the Court. Although district courts do not have jurisdiction to review final deportation proceedings, district courts do have subject matter jurisdiction to review matters ancillary to deportation proceedings, including review of a denial of status adjustment. *JAA,* 779 F.2d at 571; *Daneshvar v. Chauvin,* 644 F.2d 1248, 1251 (8th Cir.1981). In this case, the District Director's denial of Velazquez's extreme hardship waiver was part of a proceeding separate and distinct from his deportation hearing, and thus is reviewable in this Court.

## II. Section 216(c)(4)(A) Extreme Hardship Waiver

Velazquez claims he is entitled to a Section 216(c)(4)(A) extreme hardship waiver. In order to assess this claim, a brief analysis of the operation of Section 216 is necessary. Section 216 is part of the Immigration Marriage Fraud Amendments of 1986 ("IMFA"). Pub.L. No. 99–639, (1986), codified at 8 U.S.C. § 1186a. Section 216 grants lawful permanent resident status to alien spouses of United States citizens. INA § 216(a)(1). However, it also imposes a two-year conditional period on this permanent resident status. Under Section 216, the conditional resident status will expire, and the alien spouse's permanent resident status will be terminated, unless (1) the alien spouse files a petition to remove the conditional basis of residence and (2) appears for a personal interview be-

---

**4.** During Velazquez's deportation hearing, prior counsel filed a petition for a discretionary waiver under INA Section 241(a)(1)(H), which provides that the Attorney General may, in her discretion, suspend deportation if a petitioner shows physical presence in the United States for seven continuous years, that he has good moral character, and that his deportation would cause extreme hardship. Velazquez currently acknowledges he was not eligible for that waiver, and that his counsel should have applied for a hardship waiver under INA section 216(c)(4)(A).

**5.** This Court will consider Velazquez's eligibility for a Section 216 hardship waiver directly and

independent of the prior final deportation proceedings. Thus, to the extent his ineffective assistance of counsel claim relates to his eligibility for a Section 216 hardship waiver rather than his eligibility for a Section 241(a)(1)(H) hardship waiver or the validity of his final deportation hearing, Velazquez cannot demonstrate he was prejudiced by his prior counsel's performance because the Court does not base its findings on these prior proceedings. *See Esposito v. I.N.S.,* 987 F.2d 108, 111 (2nd Cir.1993) (holding that a party must show prejudice in order to pursue an ineffective assistance of counsel claim).

fore an INS official. INA §§ 216(c)(1), (2). This petition must be filed within ninety days prior to the end of the alien's two-year conditional resident status. INA § 216(c)(2). If the INS determines that the alien spouse entered into the marriage for the purpose of procuring entry as an immigrant, the INS must terminate the alien's conditional resident status. INA §§ 216(c)(3) and (d)(1)(A). If the INS determines that the marriage was bona fide, and otherwise complies with INS requirements, the conditional basis of the alien's permanent resident status is removed, and the alien spouse becomes a permanent United States resident. *Id.*

Under this statute, the filing of the Section 216(c)(1) petition to remove the conditional basis of residence and participation in a personal interview with the INS are mandatory. *Id.* However, Section 216(c)(4) provides that the INS may waive the filing and interview requirements set out in Section 216(c)(1) in certain circumstances. Specifically, Section 216(c)(4) provides:

> HARDSHIP WAIVER.—The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status *for an alien who fails to meet the requirements of [Section 216(c) ](1)* if the alien demonstrates that—
>
> (A) extreme hardship would result if such alien is deported,
>
> (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), or
>
> (C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault for failing to meet the requirements of paragraph (1).

INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4) (emphasis added).

On December 27, 1994, Velazquez filed a petition for a Section 216(c)(4)(A) extreme hardship waiver with the INS District Director. The District Director concluded that Velazquez was not eligible to request a Section 216(c)(4)(A) hardship waiver, and that even if he were, he had not demonstrated the requisite "extreme hardship" called for under this Section. In his Amended Petition for Writ of Habeas Corpus, Velazquez contests these conclusions and contends that he is both eligible for, and entitled to, a Section 216 hardship waiver. The Court will consider each of these contentions in turn.

*A. Eligibility*

■ The District Director determined that Velazquez was not eligible for a Section 216(c)(4)(A) hardship waiver because he participated in a sham marriage to procure immigration benefits. Velazquez challenges this interpretation of Section 216, and argues that his sham marriage does not prohibit him from applying for the Section 216(c)(4)(A) extreme hardship waiver. He claims that because the express terms of Section 216(c)(4)(B) and (C) require that "the qualifying marriage was entered into in good faith by the alien spouse," and because the extreme hardship waiver contained in Section 216(c)(4)(A) does not contain this language, an alien who participated in marriage fraud may apply for the Section 216(c)(4)(A) waiver.

■ In reviewing an agency's decision, courts must pay special deference to an agency's interpretation of a statute it administers. The Court may not impose its own construction of the statute; rather "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *accord National Grain and Feed Ass'n v. I.C.C.,* 5 F.3d 306, 308 (8th Cir.1993). Courts must uphold an agency's interpretation of a statute so long as the agency's interpretation is "permissible" and not contrary to the plain and unambiguous language of a statute. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82.

The INS' interpretation is permissible, is consistent with the INA's statutory scheme, and is not contrary to the plain and unambiguous language of the statute. Section 216(c)(4)(A) does not specifically address whether it applies to confer immigration benefits on an alien who engages in a sham marriage. However, the language of Section 216 indicates that it does not. By its express terms, Section 216(c)(4) simply excuse an alien spouse for failing to comply with Section 216(c)(1). Section 216(c)(1) requires an alien applying for permanent resident status to submit a timely petition requesting a removal of conditional status and to appear for a personal interview before an INS official. Under Section 216, these are prerequisites to obtaining permanent resident status on the basis of marriage to a United States citizen. Thus by their express terms, the waivers permitted under Section 216(c)(4) relate only to the *filing and interview* provisions of Section 216(c)(1); they do not otherwise remove or excuse the applicant from complying with the substantive conditions required for removal of an alien's conditional residence status contained throughout Section 216.

Section 216 contains several other specific requirements an alien spouse must satisfy in order to obtain permanent resident status. Most significantly, under Sections 216(c)(3)(A) [6] and 216(d)(1)(A)(i), applicants must swear, under penalty of perjury, that "the qualifying marriage ... was not entered

into for the purpose of procuring an alien's entry as an immigrant."

Velazquez cannot satisfy this provision as a matter of law. Congress specifically defined the term "qualifying marriage" as "a marriage which was entered into less than 24 months *before* the alien obtains [ ] the status of an alien lawfully admitted for permanent residence (whether on a conditional basis or otherwise.)" INA § 216(g)(3) (emphasis added). Velazquez was granted status as an alien lawfully admitted for permanent residence on a conditional basis—due to his sham marriage to Jennifer Brady—on January 28, 1987. Thus the "qualifying marriage" upon which he must predicate his Section 216 application had to occur *before* January 28, 1987; he cannot use his current marriage to justify his Section 216 application.[7] Velazquez manifestly cannot ground his current Section 216 application on the basis of his "qualifying marriage" to Jennifer Brady. This would require Velazquez to perjure himself under Section 216(d)(1)(A)(i). Such a result is unquestionably contrary to Congress' intent in drafting Section 216, and demonstrates that Congress likely did not intend aliens who engage in sham marriages to be eligible for a Section 216(c)(4)(A) waiver. As a result, the INS' determination that he is not eligible for a Section 216(c)(4)(A) hardship waiver is consistent with the operation of Section 216 as a whole.[8]

---

**6.** Section 216(c)(3) requires the INS to determine whether the facts and information described in Section 216(d)(1)—including Section (d)(1)(A)(i)'s requirement that the marriage not be entered into to procure immigration benefits—are true with respect to the qualifying marriage. If not, the INS must terminate the alien's conditional resident status. The waiver provision contained in Section 216(c)(4) refers only to aliens who fail to meet the requirements of Section 216*(c)(1);* it does not waive the requirements of Section 216(c)(3) or (d). Indeed, if Congress intended the waivers in Section 216*(c)(4) to apply generally to Section 216(c),* or to Section 216 in its entirety, it could have done so simply by not limiting the waivers to Section 216(c)(1).

**7.** Section 216 applies only to aliens seeking to remove their status as conditional permanent residents. In this case, Velazquez obtained his status as a conditional resident solely because he engaged in a sham marriage. He would not have had conditional permanent resident status

in the first instance, and thus would not be prima facie eligible under Section 216, but for his attempt to defraud the INS. It would be extremely anomalous to give Velazquez immigration benefits—benefits not available to other aliens who comply with the law, and who may suffer hardship by deportation—simply by virtue of the fact that he illegally obtained conditional permanent resident status.

**8.** The fact that Congress did not intend to give immigration benefits to an alien who engages in a sham marriage is also evident from Section 216(b). Section 216(b) requires the INS to terminate an alien's conditional resident status any time before the expiration of the two-year conditional period if the INS determines that the marriage was entered into for the purpose of procuring immigration benefits. The waiver provisions in Section 216(c)(4) do not apply to this Section. Thus the statute clearly contemplates terminating an alien's conditional status even if deportation will cause extreme hardship. This provision

Section 216(d)(1)(A)(i) is also important because it illustrates Congress' policy with regard to sham immigration marriages. In this case, the INS contends that its interpretation of Section 216 is not only "permissible," it also is consistent with congressional intent. This contention is supported by Section 216's legislative history. In enacting the IMFA, under which Section 216 was promulgated, Congress stated that "[t]he purpose of this bill is to deter immigration related marriage fraud." H.R.Rep. No. 906, 99th Cong., 2nd Sess. 1 (1986), 1986 U.S.C.C.A.N. 5978. In fact, in explaining the IMFA's purpose, Congress specifically stated that the bill was promulgated to "perpetually bar[ ] from immigrating to the United States any alien who has conspired to engage in a fraudulent marriage or who has attempted to obtain an immigration benefit on the basis of such marriage." *Id.* at 6–7 (1986). Moreover, the fact that Congress spoke directly to the issue of sham marriages throughout Section 216, and specifically required as a substantive condition under Section 216 that applicants swear the qualifying marriage was not entered into for the purpose of procuring immigration benefits, demonstrates Congress did not intend to grant permanent resident status to aliens who engage in sham marriages. (*See also supra,* note 7.)

The INS' finding that Velazquez was not eligible for a Section 216 waiver is both consistent with the language of the statute and in accordance with congressional intent. The Court accordingly determines that Velazquez is not eligible for a Section 216(c)(4)(A) extreme hardship waiver and that the District Director's construction of Section 216(c)(4)(A) was justified.

### B. Extreme Hardship

The District Director determined that even if Velazquez were eligible to request a Section 216(c)(4)(A) waiver, he has not demonstrated the requisite "extreme" hardship. Velazquez claims this finding was

arbitrary, capricious, and an abuse of discretion. (Amend. Pet. for Writ of Habeas Corpus ¶ 34.) Although the Court has upheld the INS' decision to reject Velazquez's Section 216(c)(4)(A) application, it will address this additional argument.

Whether an alien will suffer "extreme hardship" by being deported is a matter committed to the agency's discretion. *Salas–Velazquez v. I.N.S.,* 34 F.3d 705, 709 (8th Cir.1994). A reviewing court may not substitute its own interpretation of "extreme hardship" for that used by the INS. *I.N.S. v. Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). As a result, in order to overturn the INS' determination on this issue, Velazquez must demonstrate that the INS District Director acted arbitrarily, capriciously, or abused his discretion. *Maashio v. I.N.S.,* 45 F.3d 1235, 1237 (8th Cir. 1995). Furthermore, in considering whether Velazquez has demonstrated "extreme hardship," the INS may consider only those circumstances occurring during the period the alien was admitted for permanent resident status on a conditional basis. INA § 216(c)(4); 8 U.S.C. § 1186a(c)(4). Velazquez's conditional resident status terminated with the BIA's dismissal of his appeal on June 25, 1993.

The INS determined that Velazquez had not demonstrated "extreme hardship" under 8 U.S.C. § 1251(a)(1)(H) during his deportation hearings, and the Eighth Circuit affirmed that finding.[9] The INS contends that the doctrine of collateral estoppel bars Velazquez from relitigating the issue of hardship in this action. Velazquez contends that he is not collaterally estopped from demonstrating hardship because new evidence may be submitted on a motion to reopen deportation proceedings and because he did not receive effective assistance of counsel to present his "hardship" evidence before the BIA and the Eighth Circuit. (Petitioner's Reply Mem. at 16.) Velazquez's first contention is

---

does not apply to Velazquez because his two-year conditional period expired before the INS determined his marriage to Jennifer Brady was fraudulent. It is unreasonable, however, to assume Congress intended to give an alien the benefit of the waiver provisions simply because the alien was able to successfully deceive the INS for the full two-year period.

9. The Eighth Circuit specifically held that the INS did not abuse its discretion when it concluded that deporting Velazquez would not cause "extreme hardship." *Salas–Velazquez v. I.N.S.,* 34 F.3d 705, 708–09 (8th Cir.1994).

not well-grounded. The matter before the Court is not a motion to reopen; it is a request to file a Section 216(c)(4) hardship waiver. Under this Section, Velazquez may not present evidence arising after June 25, 1993; the date his conditional residence status was terminated.

More importantly, the Court need not resolve whether the collateral estoppel doctrine applies. In this case, the District Director did not rely solely on the prior BIA and Eighth Circuit hardship decisions. Instead, Velazquez, assisted by *present* counsel, submitted his new evidence of extreme hardship to the INS District Director in his December 27, 1994 petition for a Section 216(c)(4)(A) hardship waiver. In this petition, Velazquez outlined the hardship he and his family would suffer if he were deported.[10] This is the same evidence currently before the Court in support of Velazquez's habeas petition. After "careful review of the entire record," the District Director determined that "even if [Velazquez] were prima facie eligible to file this petition, it is concluded that persuasive evidence of *extreme* hardship has not been introduced in this proceeding." (Pet. for Writ of Habeas Corpus, Ex. 1, at 10, 8.) Thus even if his prior counsel's representation was deficient, that deficiency has been cured by the December 27, 1994 petition.

Velazquez has not demonstrated the District Director abused his discretion in making this finding. The Court recognizes that his deportation unquestionably will involve hardship.[11] However, whether this hardship is "extreme" is a determination committed to the INS' discretion, and the Court may not substitute its view of "extreme hardship" for that of the INS. As the Eighth Circuit

explained in Velazquez's initial appeal, "[t]he term 'extreme hardship' necessarily has no fixed, quantitative content. Its definition is a matter of judgment, which inevitably is somewhat subjective. The interpretation of the term is committed to the agency's discretion." *Salas–Velazquez v. I.N.S.*, 34 F.3d 705, 709 (8th Cir.1994) (citation omitted). In this case, the District Director reviewed Velazquez's evidence and concluded that the hardship alleged was not atypical of the hardship suffered by other aliens forced to leave this country. (Pet. for Writ of Habeas Corpus, Ex. 1 at 11.) The District Director is in a far better position than this Court to assess Velazquez's hardship relative to the usual hardships suffered by deported aliens and their families. This determination falls squarely within the expertise of the INS and its administrators. As a result, the Court concludes that the District Director did not abuse his discretion in denying Velazquez's hardship waiver petition.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. No. 5.) is **DISMISSED;** and

(2) Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 2) is **DENIED AS MOOT.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**10.** Specifically, Velazquez presented evidence that his wife and two children have never been to Mexico and do not speak Spanish; that his family is part of a uniquely strong family and community network in the Twin Cities; that he and his family are self-supporting and own a home; that he has resided outside of Mexico for ten years; that he has no family network left in Mexico; that his children would suffer emotional harm by being forced to leave the United States, or by being permanently separated from their father; that Mexico, and in particular Mexico City, is environmentally dangerous; and that his wife was recently diagnosed as a carrier for Reiter's Syndrome. (Pet. for Writ of Habeas Corpus, Ex.

2 at 7–9; Amend. Pet. for Writ of Habeas Corpus, Ex. D.)

**11.** In fact, the INS regulations themselves provide:

[i]n considering an application for a waiver based upon an alien's claim that extreme hardship would result from the alien's deportation ... [t]he District Director shall bear in mind that any deportation from the United States is likely to result in a certain degree of hardship, and only in those cases where the hardship is extreme should the waiver application be granted.

8 C.F.R. § 216.5(e)(1) (1994).