**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 30, 2007**

**Charles R. Fulbruge III**
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-60625

_____

TANUJA SAHAI GIL WAGGONER,

                                                    Petitioner,

                              v.

ALBERTO R. GONZALES,
U.S. Attorney General,

                                                    Respondent.

_____

On Petition for Review from an Order of
the Board of Immigration Appeals

_____

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

BENAVIDES, Circuit Judge.

The petitioner seeks review of the Board of Immigration Appeals's ("BIA") ruling that she was statutorily ineligible for an extreme hardship waiver based on a finding that her marriage was not entered into in good faith. 8 U.S.C. § 1186a(c)(4)(A). Finding the plain language of the statute does not require a good faith marriage to obtain an extreme hardship waiver, we grant the petition.

I.    BACKGROUND

Tanuja Sahai Gil Waggoner (Waggoner) is a native and citizen

of the Fiji Islands. She entered the United States in April 1991 on a nonimmigrant visa. Waggoner married a United States citizen, Domingo Gil, and in June 1992 she applied for a transfer in status on the basis of her marriage. In October 1992, the former Immigration and Naturalization Service (INS) adjusted her status to a conditional permanent resident on the basis of her marriage to a United States citizen, pursuant to 8 U.S.C. § 1186a(a)(1) (1994).

In September 1994, Waggoner filed a Petition to Remove the Conditions on Residence. Waggoner reported that she could not file the statutorily-required joint petition and requested a waiver because she was divorced despite the fact that she had entered the marriage to Gil in good faith. § 1186a(c)(1). The INS denied the waiver, determining that Waggoner had presented no evidence that she had committed to her relationship with Gil and thus had entered her marriage in bad faith. On February 9, 1995, the INS terminated Waggoner's conditional resident status and issued an Order to Show Cause.

At her initial appearance before the Immigration Judge (IJ) on July 25, 1995, Waggoner admitted her citizenship status in the Fiji Islands and her admission in the United States, but denied the adjustment of her status to conditional permanent resident and the termination of that status on the basis of her bad faith marriage. The IJ found that the other allegations were true.

While the case was pending before the IJ, Waggoner received approval from the INS for adjustment of status based upon her

2

marriage to her second husband, Steven Waggoner (Steven).  The INS later revoked the approval of the adjustment of status based on the finding that Waggoner's first marriage was not entered into in good faith.  Waggoner also filed an amended petition to remove the conditions on her permanent resident status, asserting that she was unable to file a joint petition with Gil in conjunction with her first request for adjustment of status because "[t]he termination of my status and deportation from the United States would result in an extreme hardship."  8 U.S.C. § 1186a(c)(4)(A).  The INS also denied this petition, concluding that Waggoner was not entitled to the "extreme hardship" exception because of her first bad-faith marriage.

The IJ held a hearing to address whether Waggoner's first marriage was in fact a sham.  After testimony from Waggoner, Gil, Waggoner's mother, and her uncle, Waggoner attempted to present testimony from her second husband, Steven, that would establish the "extreme hardship" waiver.  The IJ refused to admit the testimony, concluding that the waiver was unavailable if the INS proved that the first marriage was a sham.  The IJ indicated his inclination to conclude that the first marriage was a sham, and Waggoner requested an opportunity to file an asylum application based upon problems suffered by native Indians in Fiji.  However, she later waived her opportunity to apply for asylum, noting that at the time the conditions in Fiji would not justify such relief.

The IJ ordered Waggoner deportable after concluding that her

first marriage was not entered in good faith. The IJ again noted that Waggoner had sought an "extreme hardship" waiver but concluded that even if she could establish such hardship, she was ineligible for the waiver because of her "willing participation in a sham marriage."

Waggoner appealed the adverse ruling to the BIA. She asserted that the IJ and INS incorrectly concluded that her bad-faith marriage rendered her ineligible for the "extreme hardship" waiver. Waggoner also noted that "conditions in Fiji have changed markedly since April 1999, when Respondent declined the opportunity of applying for asylum."[1] The INS objected to the remand, contending that Waggoner had failed to submit an asylum application under 8 C.F.R. § 3.2(c)(1) (currently § 1003.2(c)(1)).

In November 2002, the BIA administratively closed the proceedings so that the INS could decide whether to elect to terminate deportation proceedings and reinstate the proceedings as removal proceedings, which would allow Waggoner to apply for cancellation of removal based on her continuous presence in the United States. In February 2005, the government moved to reopen the case after concluding that such "repapering" was not appropriate in light of Waggoner's sham marriage. The BIA

---

[1] Specifically, she noted that in May 2000 indigenous Fijian rebels took over the government and engaged in violence against ethnic Indo-Fijians, such as Waggoner. If the BIA concluded Waggoner was not entitled to relief on her waivers, she requested that the case be remanded to the IJ to allow her to apply for asylum and withholding of deportation.

4

reinstated the proceedings and dismissed Waggoner's appeal.  The BIA concluded that Waggoner was not entitled to a remand to file an asylum application because she had failed to file an application for asylum and because she had previously waived her right to seek asylum.  The BIA also concluded that there was insufficient evidence to show that Waggoner's first marriage was entered in good faith and that, as a result, she was ineligible for the "extreme hardship" waiver.  Waggoner petitions this Court for review.

II.  ANALYSIS

A. EXTREME HARDSHIP WAIVER PROVISION

The instant question is one of statutory interpretation. Waggoner argues that section 1186a(c)(4)(A) does not require her to prove that her marriage was entered into in good faith to qualify for an extreme hardship waiver.  8 U.S.C. § 1186a(c)(4)(A).

"Section 1186a facilitates the detection of fraudulent marriages by withholding permanent resident status from immigrants who marry United States citizens unless these couples meet two conditions." *Olabanji v. INS,* 973 F.2d 1232, 1233 (5th Cir. 1992). It allows alien spouses of United States citizens to become permanent residents after a two-year conditional status if, (1) within ninety days of the expiration of that two-year period, the alien and spouse file a joint petition to remove the conditional basis and (2) both appear before an immigration official for a personal interview.  § 1186a(c)(1).  However, if the alien spouse

5

fails to meet these requirements, section 1186a(c)(4) provides three grounds that excuse compliance with section 1186a(c)(1)'s requirements of a joint petition and personal interview:

> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that –
>
> (A) extreme hardship would result if such alien is removed,
>
> (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), or
>
> (C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault in failing to meet the requirements of paragraph (1).

In the instant case, the BIA denied relief, stating that "[b]ecause of [Waggoner's] willing participation in a sham marriage, she is ineligible to receive 'good faith' and/or 'hardship' waivers." Waggoner expressly does not challenge the agency's determination that her first marriage was not entered into in good faith.[2] Her position is that the "extreme hardship" provision, subsection 1186a(c)(4)(A), does not require such a

---

[2] Waggoner takes pains to explain that she does not concede that she entered the marriage in bad faith. She asserts she entered into the marriage in good faith but that there was a lack of evidence to prove the marriage "bona fide."

showing.

The crux of the matter is whether the first ground, the "extreme hardship" prong of the waiver provision, implicitly requires that the qualifying marriage be entered into in good faith. Although the latter two subsections explicitly contain a requirement that the qualifying marriage be entered in good faith by the alien spouse, the "extreme hardship" provision does not.

This Court gives deference to the BIA's interpretation of the Immigration and Nationality Act (INA) under the principles of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984). *Chevron* provides for a two-step inquiry. "We first ask whether Congress has spoken directly to the precise question at issue." *Heaven v. Gonzalez,* 473 F.3d 167, 174-75 (5th Cir. 2006) (citing *Chevron,* 467 U.S. at 842; *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 502 (5th Cir. 2006)). "If Congress's intent is clear, the BIA and this court must give effect to that intent." *Id.* at 175 (citing *Chevron*, 467 U.S. at 842-43; *Malagon*, 462 F.3d at 502). However, if "the statute is silent or ambiguous with respect to the specific issue, we ask only whether 'the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843; *Malagon*, 462 F.3d at 502).

Thus, our first inquiry is whether Congress has spoken directly with respect to whether a good faith marriage is needed to qualify for an extreme hardship waiver. "When interpreting

7

statutes, we begin with the plain language used by the drafters. Furthermore, each part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole." *United States v. Uvalle-Patricio*, 478 F.3d 699, 703 (5th Cir. 2007) (internal quotation marks and citation omitted).

As previously quoted, the statute lists three grounds for excusing the failure to meet the joint petition and interview requirements, and the first ground is extreme hardship. Unlike the second and third grounds, the extreme hardship exception does not list the requirement of a good faith marriage. The canon of statutory construction "*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)" indicates that extreme hardship is the only requirement. *United States v. Shah*, 44 F.3d 285, 293 (5th Cir. 1995). Moreover, to read the extreme hardship exception as implicitly requiring a good faith marriage would render superfluous the words setting forth that requirement in the second and third exceptions. "We must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." *Bustamante-Barrera v. Gonzales,* 447 F.3d 388, 397 (5th Cir. 2006), *cert. denied,* 127 S.Ct. 1247 (2007). Finally, the three grounds are set forth disjunctively as separate and independent bases to excuse the joint petition and interview requirement. *See In re Balsillie*, 20 I&N

8

Dec. 486, 491 (BIA 1992)(§ 1186(a)(4) creates three separate waiver provisions); *cf. United States v. Canada,* 110 F.3d 260, 264 (5th Cir. 1997) (recognizing that terms set forth disjunctively are generally given separate meanings).

Accordingly, after applying these canons of statutory construction, we find that the statutory language unambiguously does not require a good faith marriage to qualify for an extreme hardship waiver. Although we may well conclude a different result is more appropriate, when a statute is clear on its face, we must faithfully interpret it. *Matter of Pro-Snax Distributors, Inc.,* 157 F.3d 414, 425 (5th Cir. 1998). Indeed, even if Congress inadvertently failed to include the good faith marriage requirement in the extreme hardship waiver provision, we are precluded from reading it into the text. *Id.* Having found the statutory language unambiguous, "the BIA and this court must give effect to that intent." *Heaven,* 473 F.3d at 175 (citing *Chevron*, 467 U.S. at 842-43). Thus, we do not reach the second step of the *Chevron* inquiry, and no deference is afforded to the BIA's interpretation.

Although research indicates that this is the first time this precise issue has been joined before a circuit court, a district court has upheld the former INS's ruling that a qualifying marriage must be in good faith to be eligible for the extreme hardship

9

waiver. *Velazquez v. INS,* 876 F.Supp. 1071 (D. Minn. 1995).[3] In *Velazquez,* the district court ruled that the former INS's interpretation was permissible and consistent with the statutory scheme and was "not contrary to the plain and unambiguous language of the statute." *Id.* at 1077. The court further found that the extreme hardship waiver did "not specifically address whether it applies to confer immigration benefits on an alien who engages in a sham marriage," but the language of section 1186a "indicates that it does not." *Id.* The court applied *Chevron* deference despite having found the statutory language plain and unambiguous. While unclear, it appears that the court believed the statute was silent as to the instant question and therefore accorded deference to the agency's determination.

---

[3] One commentator has reported that the Eighth Circuit held a good faith marriage is necessary to be eligible for the extreme hardship waiver. Ann Gallagher, 2 Immigration Law Serv. 2d § 7:224 (West 2007) (discussing *Nyonzele v. INS,* 83 F.3d 975 (8th Cir. 1996)). In *Nyonzele,* the Eighth Circuit addressed a petitioner's contention that the Attorney General had erred in denying a waiver of the joint petition requirement pursuant to section 1186a(c)(4). 83 F.3d 979-81. The Eighth Circuit discusses the hardship waiver statute as a whole and does not treat the three subsections of the statute as separate grounds for a waiver. Indeed, the only time the phrase "extreme hardship" occurs in the opinion is in a footnote that sets forth the statute. *Id.* at 979 n.2. In any event, the petitioner did not raise the argument that a good faith marriage was unnecessary to be eligible for an extreme hardship waiver. Instead, he argued that the Attorney General abused his discretion in concluding that the marriage was not entered into in good faith. Although the issue at bar was not joined in *Nyonzele,* the Eighth Circuit was aware of the *Velazquez* opinion in that it cited *Velazquez* as "offering an overview of the operation of § 1186a." 83 F.3d at 979.

The court believed that the hardship waiver provision of section 1186a(c)(4) "simply excuse[s]" an alien for failing to meet the petition and interview requirements of section 1186a(c)(1). *Id.* at 1077. The court opined that the waiver provisions "do not otherwise remove or excuse the applicant from complying with the substantive conditions required for removal of an alien's conditional residence status contained throughout [section 1186a]." *Id.* The court noted that section 1186a(c)(3) requires a determination of whether the facts alleged in the petition as required by section 1186a(d)(1) are "true with respect to the qualifying marriage." Subsection (d)(1) requires a statement that the qualifying marriage, among other things, "was not entered into for the purpose of procuring an alien's admission as an immigrant" and that "no fee or other consideration was given . . . for the filing of a petition . . . with respect to the alien spouse."

We cannot agree with the *Velazquez* court's reading of the statute. The hardship waiver provision of section 1186a(c)(4) expressly allows the Attorney General, in his discretion, to "*remove the conditional basis* of the permanent resident status for an alien who fails to meet the [joint petition and interview] requirements . . . if the alien demonstrates that . . . extreme hardship would result." (emphasis added). Contrary to *Velazquez*, we understand that to be the end of the process. In other words, once the alien has demonstrated that extreme hardship would result

11

from her removal, there is nothing else for the alien to do. The Attorney General must then make the discretionary decision of whether to remove the conditional basis of the permanent resident status.

Although the district court in *Velazquez* found it significant that sections 1186a(c)(3)(A) and 1186a(d)(1)(A)(i) require an applicant to swear that the marriage "was not entered into for the purpose of procuring an alien's entry as an immigrant," those requirements relate to filing the joint petition and appearing for the joint interview. *Velazquez,* 876 F.Supp. at 1077. Thus, once the required joint petition and interview are excused, those two sections are no longer relevant.[4] The district court also relied on the legislative history in support of its decision. *Id.* at 1078. If, however, there is no "ambiguity, our examination is confined to the words of the statute, which are assumed to carry their ordinary meaning." *Matter of Pro-Snax Distrib., Inc.,* 157 F.3d at 425 (internal quotation marks and citation omitted).

---

[4] Additionally, section 1186a(b)(1) provides that if, prior to the expiration of the two-year period of conditional status, the Attorney General determines that the marriage was for the purpose of gaining admission as an immigrant, the alien's permanent resident status shall be terminated. Although, unlike sections 1186a(c)(3)(A) and 1186a(d)(1)(A)(i), this provision is independent of the petition and interview requirements. We do not believe that it amends the unambiguous language of the hardship waiver provision. In any event, it appears that section 1186a(b)(1) is inapplicable to Waggoner in that the former INS did not terminate her conditional resident status until after the expiration of the two-year period.

Stated another way, "[r]ecourse to the legislative history is unnecessary in light of the plain meaning of this text." *Id.*

We are mindful of the common mandate of statutory construction to avoid absurd results. *See, e.g., Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir. 2002). While we may not have chosen this result, we do not believe it is absurd. As Waggoner points out, Congress has made other exceptions to immigration requirements based on extreme cruelty or hardship in the INA. Perhaps most analogously, in the context of an alien who is inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) for having fraudulently misrepresented a material fact to procure admission into the United States, Congress has delegated discretion to the Attorney General to waive inadmissibility if the alien proves that refusal of such admission would cause extreme hardship to the alien's family member who is a citizen or lawful permanent resident. 8 U.S.C. § 1182(i)(1). *See also* §§ 1229b(b)(1) and (2).[5]

Accordingly, in light of the plain language of the statute and the INA's other analogous hardship waiver exceptions, we conclude

---

[5] Section 1229b(b)(1) allows the Attorney General to cancel removal and adjust status from deportable to lawful permanent residence when, among other things, it would result in exceptional and extremely unusual hardship to the alien's family member who is a citizen or lawful permanent resident. Section 1229b(b)(2) allows the Attorney General to cancel removal and adjust status of an alien from deportable to lawful permanent resident if the alien demonstrates that he or she has been battered or subjected to extreme cruelty by a spouse or parent who is a citizen or lawful permanent resident.

13

that an alien does not have to demonstrate a good faith marriage to obtain an extreme hardship waiver under section 1186a(c)(4). We grant the petition and remand the case to allow Waggoner to present her evidence of extreme hardship to the IJ.

B. ASYLUM

Waggoner asserts that the BIA erred in denying her request to remand her case to allow her to apply for asylum on the basis of changed country conditions. She notes that the BIA based its denial on her failure to file an asylum application and on her express waiver of the right to file an application submitted before the IJ. Waggoner contends that because the BIA failed to cite to a regulation requiring her to submit an asylum application with her request for remand, the absence of an application should not bar her claim for relief. Waggoner also notes that in light of her allegations of changed country conditions in 2000, her 1999 waiver should not be held against her.

The regulations provide that an alien may seek to have a case reopened based on changed circumstances if the motion is accompanied by an application for relief and all supporting documentation. *See* 8 C.F.R. § 1003.2(c)(1). A motion to reopen filed while an appeal to the BIA is pending may be deemed as a motion to remand for further proceedings before the IJ. § 1003.2(c)(4). This Court reviews the BIA's order on a motion to reopen under a highly deferential abuse-of-discretion standard.

14

*See Lara v. Trominski*, 216 F.3d 487, 496 (5th Cir. 2000); *Osuchukwu v. INS*, 744 F.2d 1136, 1141 (5th Cir. 1984).

Waggoner cannot establish that the BIA abused its discretion in denying her motion for remand. Her motion was based upon changed country conditions in Fiji indicating an increased risk of violence against Indo-Fijians. Although she did not specifically ask for reopening of her case, "[a] motion to reopen proceedings shall state the new facts that will be proven at a hearing" and must rely on previously unavailable evidence; Waggoner's motion was in fact a motion to reopen. § 1003.2(c)(1). The regulation provides that "[a] motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." *Id*. Waggoner did not submit such an application. In the absence of this application, the BIA did not abuse its discretion in denying Waggoner leave to remand. *See Lara*, 216 F.3d at 496.

III. CONCLUSION

For the above reasons, the petition for review is GRANTED and the case is REMANDED to allow proceedings consistent with this opinion.