JAMES E. GRAVES, JR., Circuit Judge,
concurring:
Although I agree with the rest of the majority’s analysis, I would hold that the district court plainly erred in applying the § 2A4.1(b)(6) enhancement. The enhancement applies “[i]f the victim is a minor and, in exchange for money or other consideration, was placed in the care or custody of another person who had no legal right to such care or custody of the victim.” The majority finds the enhancement to be warranted because Luis Cedillo and his co-conspirators paid Martha Quiroga $500 to house and feed the hostages, including J.A.M.N., a minor. The presen-tence report explains that this money was “in exchange for the use of [Quiroga’s] residence to harbor undocumented aliens and for her services to cook for the individuals for approximately two days.”
I have two objections to the majority’s affirmance of the enhancement on these facts. First, in my view, the only reasonable interpretation of § 2A4.1(b)(6) is that the defendant must receive money or consideration in exchange for placing a minor in the care of custody of some unauthorized person. Here, because Luis Cedillo and his co-conspirators received no money or other consideration for placing J.A.M.N. in anyone’s care or custody, the enhancement is not applicable. Second, even assuming the enhancement would apply in a situation where a kidnapper or hostage-taker pays a third party to exercise “care or custody” over a minor victim, J.A.M.N. was never in the “care or custody” of Martha Quiroga.
I
“The Sentencing Guidelines are subject to the rules of statutory construction.” United States v. Rocha, 916 F.2d 219, 243 (5th Cir.1990). “[T]he common mandate of statutory construction [is] to avoid absurd results.” Waggoner v. Gonzales, 488 F.3d 632, 638 (5th Cir.2007). The guideline specifies that there must be an “exchange *407 [of] money or other consideration,” but, as the First Circuit has noted, “does not specify in which direction the exchange of money or other consideration must go.” United States v. Alvarez-Cuevas, 415 F.3d 121, 126 (1st Cir.2005).
The language of § 2A4.1(b)(6) ... most easily fits a kidnap-for-hire situation, where the child is kidnapped, by special order, to be turned over to the custody of a third party who has no custody rights and who has paid the kidnappers to do the job. There, the minor, “in exchange for money or other consideration,” is placed into the care or custody of a third party who has no custody rights. The third party, for example, may be a parent whose custodial rights have been terminated. It may also be someone who is childless but wants to raise a child, or, even more sadly, a house of prostitution.
Id. However, the literal language of the guideline would also apply to a kidnapper who hires a babysitter to watch a kidnapped child for an hour: the kidnapper pays money to the babysitter, and in exchange, the child is placed into the “care or custody” of the babysitter (who has no legal right to the care or custody of the child).
In my view, it would be absurd to apply a three-level enhancement equally to both scenarios. The kidnapper-for-hire is clearly more culpable. For the same reasons that the guidelines punish kidnapping more harshly when a ransom demand is made, see § 2A4.1(b)(l), it makes sense that a defendant who kidnaps a child for monetary gain should be punished more harshly than a defendant who does so for reasons unrelated to monetary gain. However, it is difficult to understand why a defendant who kidnaps a child is deserving of an additional three-level enhancement simply for having paid someone to take care of the child. If anything, such a thing should be encouraged:
The child does need someone to care for her during the period of the kidnapping. There should be no incentive for kidnappers to hide or even abandon children (thus avoiding responsibility for their custody or care). Such children may fall into even greater harm’s way before they are found.
Alvarez-Cuevas, 415 F.3d at 127. Accordingly, I would hold that the § 2A4.1(b)(6) enhancement is intended to apply only when the defendant receives money or other consideration in exchange for placing a minor in the care or custody of someone with no legal right.
II
Even assuming the enhancement would apply in a situation where a kidnapper or hostage-taker pays a third party to exercise “care or custody” over a minor victim, it is not applicable here because J.A.M.N. was never in the “care or custody” of Martha Quiroga. The term “care or custody” is not defined in § 2A4.1. However, other guidelines use the terms “care” and “custody” in connection with offenses against minors, and the application notes for these guidelines are instructive. An unrelated guideline dealing with sexual abuse of a minor, § 2A3.2(b)(l), provides an enhancement “[i]f the minor was in the custody, care, or supervisory control of the defendant.” The application notes explain that this enhancement “is intended to have broad application and is to be applied whenever the minor is entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement.” Id., comment. (n.2); see also § 2G1.3(b)(l) (parallel *408 enhancement in guideline for promoting prohibited sexual conduct with a minor).
As another court has noted, “[t]eachers, day care providers, and baby-sitters all act in loco parentis.” United States v. Brooks, 610 F.3d 1186, 1201 (9th Cir.2010). “Care or custody,” at least in the context of a minor, refers most naturally to some type of quasi-parental authority or control over the minor. In this case, J.A.M.N. was traveling with his aunt, Irma Ferrera, who was attempting to bring him to his father in South Carolina. J.A.M.N. was therefore in the “care or custody” of Ferr-era. Throughout the kidnapping ordeal, it appears that J.A.M.N. was not separated from Ferrera. It is therefore at least arguable that J.A.M.N. was never placed in the “care or custody” of the kidnappers or any third party because he was never separated from the “care or custody” of his proper guardian.
Yet even if “custody” is understood in a broader sense, Quiroga clearly never exercised custody over J.A.M.N. The kidnappers (primarily Luis Cedillo) exercised physical custody over J.A.M.N. and the other hostages by confining them in Quiro-ga’s house for two days under threat of violence, exerting authority over them, and controlling their movements. However, there is no suggestion that Quiroga personally exercised any authority or control over the hostages at all, and the mere fact that her house was used does not place the hostages in her “custody.” Additionally, although Quiroga helped to take care of the hostages by cooking meals for them, this does not mean that they were “placed in her care.” This would be an absurd interpretation of the guideline, as it would apply to a kidnapper who stops at a restaurant to buy a kidnapped child a hamburger.
Ill
Although I would hold that the district court plainly erred in applying the § 2A4.1(b)(6) enhancement, I nevertheless conclude that this error did not affect Luis Cedillo’s substantial rights. See United States v. Escalante-Reyes, 689 F.3d 415, 419 (5th Cir.2012) (en banc). “A sentencing error affects a defendant’s substantial rights if he can show a reasonable probability that, but for the district court’s misapplication of the Guidelines, he would have received a lesser sentence.” United States v. Mudekunye, 646 F.3d 281, 289 (5th Cir.2011). The district calculated an offense level of 42 and a criminal history category of I, giving Luis Cedillo a recommended range of 360 months to life imprisonment. Absent the § 2A4.1(b)(6) enhancement, the offense level would have been 39, resulting in a recommended range of 262 to 327 months of imprisonment. However, Luis Cedillo was sentenced to 180 months of imprisonment, far below the correctly calculated minimum sentence. Moreover, the 180-month sentence was equal to that given to his brother, and the district court’s sentence was clearly driven by the need to avoid an unwarranted disparity rather than by any particular guidelines factors. Because there is no reasonable probability that Luis Cedillo’s sentence would have been lower under a correctly calculated guidelines range, his substantial rights have not been affected. Accordingly, I join the majority in affirming Luis Cedillo’s sentence.