**Pupi WHITE, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 92–2949.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1993.

Decided Oct. 8, 1993.

Allan H. Bell, North Kansas City, MO, argued, for petitioner.

Alexander H. Shapiro, Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Alison R. Drucker, and Lisa Dornell, on the brief), for respondent.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BOWMAN, Circuit Judge.

Pupi White petitions this Court for review of a deportation order issued by an immigration judge and affirmed by the Board of Immigration Appeals (the Board). We conclude that White's petition for review was untimely filed, and that we therefore have no jurisdiction to review the order. Accordingly, we dismiss the petition.

White, a citizen of Western Samoa, entered the United States on a tourist visa in June 1979. Although the maximum period he was to have been permitted to stay in this country under the terms of the visa was three months, he never has left. In April 1984, he made a false statement on a passport application, claiming he was a United States citizen when he knew that he was not. When discovered, that action triggered deportation proceedings against White, for remaining in the United States longer than permitted and for failing to comply with the conditions of his nonimmigrant status. In January 1985, he was convicted under 18 U.S.C. § 911 (1988) for "falsely and willfully represent[ing] himself to be a citizen of the United States." He received a sentence of one year, suspended pending successful completion of one year of probation.

In March 1985, an immigration judge found White deportable and denied his request for voluntary departure.[1] White appealed to the Board, which, seven years later, on June 3, 1992, dismissed the appeal, agreeing that White was ineligible for voluntary departure. The Board upheld the immigration judge's conclusion that White's conviction under § 911 was for a crime involving moral turpitude, which precluded White from proving the good moral character required for voluntary departure under 8 U.S.C. § 1254(e) (Supp. IV 1992). See 8 U.S.C. § 1101(f)(3) (Supp. IV 1992). On July 6, 1992, White moved the Board to reopen and reconsider his case and for a stay of deportation. On September 2, 1992, his petition for review of the Board's decision was filed with this Court.

White argues that the Board abused its discretion in deciding that he was not entitled to voluntary departure. According to White, the Board based its decision on an erroneous interpretation of law in concluding that White's § 911 conviction was for a crime involving moral turpitude. The Immigration and Naturalization Service (INS), in its response, argues that the Board's decision was correct, but also challenges the jurisdiction of this Court to review the Board's decision in the first instance, asserting that White's petition is time-barred. It is without dispute that White's petition for review was filed with this Court out of time, although White asks for equitable relief from the timeliness requirement. Before we consider the parties' arguments, however, we first must resolve a different jurisdictional issue raised by this Court *sua sponte* at oral argument.

I.

■ This Court has exclusive jurisdiction to review Board orders, but only when the

---

1. The Attorney General, charged with enforcing the immigration laws, 8 U.S.C. § 1103(a) (1988), has discretionary authority to grant a deportable alien voluntary departure if the alien can demonstrate good moral character for the five years preceding application. *Id.* § 1254(e) (Supp. IV 1992). Voluntary departure is desirable from the standpoint of the deportable alien as it facilitates reentry into this country. *See, e.g., id.* §§ 1182(a)(6), 1326 (1988 & Supp. IV 1992).

petition for review is filed within ninety days of issuance of a "final deportation order." 8 U.S.C. § 1105a(a)(1) (Supp. IV 1992). As noted above, on July 6, 1992, White filed with the Board a motion to reopen and reconsider. As of the date of the submission of this case (and the parties have not advised the Clerk of any change), the Board had not ruled on that motion. Thus the question for us to decide is whether a pending motion to reopen or reconsider renders an otherwise final deportation order not final for purposes of review, thus depriving this Court of jurisdiction. The practical result of that conclusion would be to extend the time for filing a petition for review to ninety days beyond the Board's denial of the motion to reopen or reconsider, and to make premature any petition filed before the Board denies the motion.

 This is a case of first impression in this Circuit. The issue has been addressed in other courts of appeals, but those circuits are split. *Compare Fleary v. INS,* 950 F.2d 711, 713 (11th Cir.1992) (dismissing petition for review because it was filed when motion to reopen was pending; thus there was no final order to review when petition was filed, and petition was not refiled within ninety days of denial of motion to reopen) *and Chu v. INS,* 875 F.2d 777, 779–80 (9th Cir.1989) (holding that petition to reopen or reconsider filed with the Board renders deportation order nonfinal)[2] *with Akrap v. INS,* 966 F.2d 267, 271 (7th Cir.1992) (holding that Board's deportation order was final notwithstanding pending motion to reopen) *and Alleyne v. INS,* 879 F.2d 1177, 1181 (3d Cir.1989) (same); *cf. Pierre v. INS,* 932 F.2d 418, 421–22 (5th Cir.1991) (per curiam) (allowing a "petition for rehearing" filed with the Board in "good faith" to toll the running of the time limit for judicial review); *Attoh v. INS,* 606 F.2d 1273, 1275 n. 15 (D.C.Cir.1979) (per curiam) (same). Complicating the question is a case decided under the Interstate Commerce Act (ICA) by the Supreme Court, wherein the Court concluded that a petition

to reopen or reconsider an action of the Interstate Commerce Commission (ICC), if filed within the time frame permitted for petitioning for review of the original order, "tolls the period for judicial review of the original order, which can therefore be appealed to the courts *directly* after the petition for reconsideration is denied." *ICC v. Brotherhood of Locomotive Eng'rs,* 482 U.S. 270, 279, 107 S.Ct. 2360, 2366, 96 L.Ed.2d 222 (1987). We find the ICC case distinguishable for a number of reasons, and disagree with the reasoning of the Ninth and Eleventh Circuits. We also believe, contrary to the Fifth and District of Columbia Circuits, that it is well beyond the scope of our role under the Immigration and Nationality Act (INA) as described by Congress to determine whether an alien has filed a motion to reopen or reconsider in "good faith" in order to decide if we have jurisdiction.

We must distinguish the *Locomotive Eng'rs* case because judicial review of both final orders of deportation and ICC final orders is governed, in general terms, by the Hobbs Act, 28 U.S.C. §§ 2341–51. *See* 8 U.S.C. § 1105a(a) (1988 & Supp. IV 1992); *Locomotive Eng'rs,* 482 U.S. at 277, 107 S.Ct. at 2365. In *Locomotive Eng'rs,* the Supreme Court construed language found in the Hobbs Act, as well as language from the Administrative Procedures Act (APA) and the ICA, to reach a conclusion—nonfinality of final orders when a motion to reconsider is pending—that appears to contradict the express language of the relevant statutes. *See Locomotive Eng'rs,* 482 U.S. at 284–85, 107 S.Ct. at 2368–69. The Hobbs Act and the APA apply also to the review of orders under the INA. There are, however, features of the INA and its regulations, and the policy concerns behind them, that augur for a different result when a final deportation order is the reviewable action.[3]

The INA regulations are not definitive on the issue, but tend to support finality of the

---

**2.** In *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1254 (9th Cir.1992), however, the Ninth Circuit held that a motion to reopen or reconsider filed **before** a later-filed but timely petition for review destroys finality of the Board's deportation order, but such a motion filed **after** the petition for

review is lodged does not affect the finality of the order.

**3.** The Immigration and Nationality Act controls when its provisions conflict with the Hobbs Act. *See* 8 U.S.C. § 1105a(a) (1988 & Supp. IV 1992).

Board's deportation order regardless of a pending motion to reopen or reconsider. The regulations provide that, in general, Board decisions "shall be final except in those cases reviewed by the Attorney General" or in those cases that are returned to the INS or the immigration judge for further proceedings. 8 C.F.R. § 3.1(d)(2).[4] The regulations further state, more specifically, that "an order of deportation ... shall become final upon dismissal of an appeal by the Board of Immigration Appeals." *Id.* § 243.1. Nowhere in the INA or its regulations is there any indication that a motion to reopen or reconsider, regardless of when it is filed or decided, has a bearing on the finality of a deportation order.

 In immigration law, motions to reopen and reconsider are not authorized by statute, but by the Attorney General in regulations promulgated pursuant to the INA, and the granting of the motions is entirely discretionary with the Board. *INS v. Doherty,* —— U.S. ——, ——, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992). The motions are new claims in the administrative process that may be filed in "any case in which a decision has been made by the Board." 8 C.F.R. § 3.2. No such motion is required to exhaust administrative remedies. *See* 8 U.S.C. § 1105a(c) (1988) (declaring that no judicial review is possible until the alien has "exhausted the administrative remedies available to him as of right under the immigration laws and regulations"); *Castillo–Villagra v. INS,* 972 F.2d 1017, 1023 (9th Cir.1992) (holding that reopening is discretionary remedy, not available "as of right," and so motion to reopen is not required to exhaust administrative remedies); *Rhoa–Zamora v. INS,* 971 F.2d 26, 31 (7th Cir.1992) (same), *cert. denied,* —— U.S. —— & ——, 113 S.Ct. 1943 & 2331, 123 L.Ed.2d 649, 124 L.Ed.2d 243 (1993). *Contra Dokic v. INS,* 899 F.2d 530, 532 (6th Cir.1990) (per curiam). Motions to reopen or reconsider in the immigration context are not appeals to the Board from its own order, but are more accurately described as collateral attacks on the Board's order. *See* 8 C.F.R. §§ 3.2, 3.8; *cf. Locomotive Eng'rs,* 482 U.S. at 279 n. 2, 107 S.Ct. at 2366

n. 2 (quoting ICC regulation that designates a "discretionary appeal" to the ICC a "petition for administrative review," unless the appeal is from an action of the entire ICC, in which case it should be designated "a petition to reopen"). The grounds that may be alleged in support of a motion to reopen or reconsider a decision by the Board are quite rigid and are very different from those grounds appropriately set forth in a petition for review to the court of appeals, where review is limited to the administrative record and the findings of fact. 8 U.S.C. § 1105a(a)(4) (1988).

These motions are more analogous to motions for relief from judgment for mistake or for newly discovered evidence made pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Criminal Procedure 33. *See Doherty,* —— U.S. at ——, 112 S.Ct. at 724 ("Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing, and motions for a new trial on the basis of newly discovered evidence."); *INS v. Abudu,* 485 U.S. 94, 107 & n. 12, 108 S.Ct. 904, 913 & n. 12, 99 L.Ed.2d 90 (1988) (citing cases applying Federal Rule of Criminal Procedure 33). In a civil case tried in federal court, a party has a year from judgment within which to bring such a motion, but the motion "does not affect the finality of a judgment or suspend its operation." Fed.R.Civ.P. 60(b). In the case of a criminal conviction, "[a] motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." Fed.R.Crim.P. 33. By the same token, a collateral habeas corpus attack on a criminal conviction, made after the direct appeals are completed, does not suspend finality of the conviction while the habeas action is pending.

The Hobbs Act gives the aggrieved party sixty days to petition for review, 28 U.S.C. § 2344 (1988), but Congress saw fit to extend that period to ninety days in the case of final orders of deportation, 8 U.S.C. § 1105a(a)(1). Under the INA regulations a motion to re-

---

**4.** All citations to the Code of Federal Regulations in this opinion are to the 1993 edition.

open or reconsider may be brought at any time before the alien departs, 8 C.F.R. § 3.2, compared with decisions under the ICA, where a party must move to reopen or reconsider ICC decisions within twenty days, *Locomotive Eng'rs,* 482 U.S. at 279 n. 2, 107 S.Ct. at 2366 n. 2. If we were to adopt the rule of suspended finality we would leave the deportation process, already designed to give deportable aliens more time to challenge deportation orders than is available to those challenging other administrative decisions, open to abuse by deportable aliens seeking to delay deportation.

An alien under a final deportation order could wait until just before the ninety-day appeal period expired and then file a motion to reopen or reconsider. The Board's denial of the motion would then be reviewable by this Court. *Aiyadurai v. INS,* 683 F.2d 1195, 1199 (8th Cir.1982). If the deportation order were not final until the motion to reopen or reconsider were denied, and if the alien had not been deported by the time the motion were decided, he could appeal from the denial of that motion—and then file another motion to reopen because of the Board's new order denying the first motion. If we permit motions to reopen or reconsider to suspend finality of a deportation order, there apparently is nothing to keep an alien from filing such motions *ad infinitum,* as the motions may be sought in any case in which the Board renders a decision—presumably including a decision denying a motion to reopen. *See Butros v. INS,* 990 F.2d 1142, 1152 (9th Cir.1993) (en banc) (Trott, J., dissenting) (noting that alien could manipulate the system so as to delay finality of deportation order indefinitely); *see also Rhoa–Zamora,* 971 F.2d at 33. Because of this potential for abuse, we are not convinced, as apparently is the Ninth Circuit, *see Berroteran–Melendez v. INS,* 955 F.2d 1251, 1255 (9th Cir.1992) (citing *Chu,* 875 F.2d at 779), that concerns of judicial efficiency compel staying judicial review pending decision on the motion to reopen or reconsider. Like the Third Circuit, we believe that, "[i]n the immigration context, Congress has determined that the potential for abusive appeals outweighs efficiency concerns." *Alleyne,* 879 F.2d at 1181.

We find support for our conclusion in the fact that a petition for judicial review in most cases will stay deportation until review is completed. 8 U.S.C. § 1105a(a)(3) (Supp. IV 1992). A motion to reopen or reconsider, however, does not have the same effect:

> The filing of a motion to reopen or a motion to reconsider shall not serve to stay the execution of any decision made in the case. Execution of such decision shall proceed unless a stay of execution is specifically granted by the Board or the officer of the Service having administrative jurisdiction over the case.

8 C.F.R. § 3.8(a); *see also id.* § 103.-5(a)(1)(iv) ("Unless the Service directs otherwise, the filing of a motion to reopen or reconsider or of a subsequent application or petition does not stay the execution of any decision in a case or extend a previously set departure date."). Without the automatic stay of deportation triggered by a timely petition for review (or the granting of a discretionary stay), the INA regulations make an alien immediately deportable in spite of his motion to reopen or reconsider and notwithstanding, we assume from the plain language of the regulations, any suspended finality (for review purposes) of the deportation order.

If the filing of a motion to reopen or reconsider within the ninety days permitted for filing a timely petition for review renders a deportation order nonfinal for all purposes, then either the deportation order would be a nullity and there would be nothing to execute (and sections 3.8(a) and 103.5(a)(1)(iv) would be nonsense), or the order would still be enforceable but the petition for review would be premature, the automatic stay would not be in effect, and the alien would be immediately deportable for as long as the motion to reopen were pending. Courts advocating suspended finality have not chosen between these two possibilities, but in our view neither is particularly satisfactory. Unlike the situations likely to arise under orders from other administrative agencies, nothing is more final under immigration law than deportation, as the alien has no recourse in the court of appeals or with the Board once he

has left the country. 8 U.S.C. § 1105a(c) (stating that the court of appeals cannot review a final order of deportation if the alien has left the country); 8 C.F.R. § 3.2 (stating that a motion to reopen or reconsider shall not be made if the alien has left the country, and any such motion shall be considered withdrawn if the alien leaves the United States while the motion is pending). The automatic stay of execution of a final order of deportation that accompanies a petition for review, considered by Congress important enough to be mandatory in immigration law, is corrupted by the scenario of suspended finality.

We note that the 1990 amendments to the INA added a provision that requires consolidation of a petition for judicial review of a deportation order with review of a decision on a motion to reopen or reconsider. 8 U.S.C. § 1105a(a)(6) (Supp. IV 1992). Although courts on both sides of the question of whether a motion to reopen renders a final order of deportation nonfinal have seized upon § 1105a(a)(6) and attributed to it various meanings, we believe this subsection to be irrelevant to the question. *Compare Akrap*, 966 F.2d at 271 (concluding that § 1105a(a)(6) supports finality of deportation order regardless of pending motions) *with Fleary*, 950 F.2d at 713 (finding support in § 1105a(a)(6) for conclusion that pending motion suspends finality). We conclude that § 1105a(a)(6) means only that if both reviews are pending at the same time they should be heard together. We do not think Congress intended by this simple provision to interfere with the goal of expediting deportation once the alien's status has been determined.

Congress intended the immigration laws to expedite deportation once an alien's deportability is established. *Alleyne*, 879 F.2d at 1180. "In administering this country's immigration laws, the Attorney General and the INS confront an onerous task even without the addition of judicially augmented incentives to take meritless appeals, engage in repeated violations, and undertake other conduct solely to drag out the deportation process." *INS v. Rios–Pineda*, 471 U.S. 444, 450–51, 105 S.Ct. 2098, 2102–03, 85 L.Ed.2d 452 (1985). If we were to suspend action on petitions for review of final deportation orders merely because motions to reopen or reconsider have been filed, we would encourage otherwise deportable aliens to file unwarranted and meritless motions of this sort, and appeals from denial of those motions, in order to delay deportation. *See Rhoa–Zamora*, 971 F.2d at 33. Such a result is plainly at odds with the congressional purpose, and would serve only to facilitate a deportable alien's efforts "to prolong litigation in order to delay physical deportation for as long as possible." *Rios–Pineda*, 471 U.S. at 450, 105 S.Ct. at 2102. "The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites." *Id.*

We hold that a motion to reopen or reconsider pending before the Board of Immigration Appeals has no effect on the finality, or the ripeness for judicial review, of a final order of deportation.[5] Thus we have jurisdiction to consider a petition for review of a final order of deportation timely filed with this Court, regardless of any pending motion to reopen or reconsider.

## II.

In part I of this opinion we have held that White's filing of a motion to reopen or reconsider does not affect our present jurisdiction over his petition for review of the INS's final order of deportation. We turn now to the INS's contention that White's petition was not timely filed, and that we lack jurisdiction for that reason. It is undisputed that White mailed his petition by registered mail from Kansas City, Missouri, on Friday, August 28, 1992. To be timely filed, it was due in the office of the Clerk of this Court in St. Louis, Missouri, no later than September 1, 1992, but it was not received until September 2, 1992. White acknowledges that the petition was filed out of time but contends

---

5. Our holding has no effect on this Court's discretion to hold in abeyance a petition for review of a final deportation order pending the Board's decision on a motion to reopen or reconsider. *See Lozada v. INS*, 857 F.2d 10, 12 (1st Cir.1988) (accepting jurisdiction over petition notwithstanding later-filed motion to reopen, but holding case in abeyance pending Board's decision on motion).

that it was constructively filed because the United States Postal Service took five days to deliver it. White asserts that this Court therefore has "equitable jurisdiction," Petitioner's Reply Brief at 8, notwithstanding that he had eighty-five days before August 28 within which to timely file the petition.

■ This is not a situation in which we have discretion to waive the filing requirements. The timeliness requirement set forth in the INA is "mandatory and jurisdictional." *Lee v. INS*, 685 F.2d 343, 343 (9th Cir.1982) (per curiam). We are further constrained by Federal Rule of Appellate Procedure 26(b), which states that we may not "enlarge the time prescribed by law for filing a petition to ... review ... an order of an administrative agency, board, commission or officer of the United States, except as specifically authorized by law."

The cases White cites in support of his argument for equitable relief from the time limit were decided under Federal Rule of Appellate Procedure 4(a), which concerns the notice of appeal required to be filed with the district court in order to appeal from the judgment in a civil action. But because a petition for review of a deportation order is a direct appeal to this Court from an administrative decision, the rule that applies to filing the petition is Federal Rule of Appellate Procedure 25(a) (emphasis added):

> Papers required or permitted to be filed in a court of appeals shall be filed with the clerk. Filing may be accomplished by mail addressed to the clerk, but filing *shall not be timely* unless the papers are received by the clerk within the time fixed for filing, except that briefs and appendices shall be deemed filed on the day of mailing if the most expeditious form of delivery by mail, excepting special delivery, is utilized.

The specific timeliness language in Rule 25(a), absent from Rule 4(a), causes us to question the applicability of Rule 4(a) cases here. Moreover, even if we thought we were empowered under our rules and the INA to grant equitable relief of the kind White seeks, he would not be entitled to such relief under the facts here. White was fast approaching the filing deadline when he finally mailed his petition. He could have chosen a more efficient method instead of selecting one (registered mail) that could actually slow down delivery. In these circumstances, we are unable to accept White's argument that the post office is responsible for the untimely filing of his petition. We hold that White's petition for review is time-barred.

We are not without sympathy for White, who appears to have established himself as a valuable member of the community, and his family. But we also must record our dismay about the amount of time he has been permitted to remain in the United States illegally. Had he been deported when he first overstayed his visa, he might already have returned to the country legally and would not now have to be separated from his family and the home he has known here for some fourteen years. That a case like this one could occur suggests that a congressional review of the immigration laws and their administration is very much in order.

White's petition for review, having been untimely filed, is dismissed for lack of jurisdiction.