**Manijeh KHALAJ, Petitioner/Appellant,**

v.

**James COLE, District Director, Immigration and Naturalization Service, Respondent/Appellee.**

No. 94–2429.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1994.

Decided Feb. 1, 1995.

Rehearing Denied March 17, 1995.

Rufino J. Villarreal, Omaha, NE, argued (Joseph Lopez Wilson, on the brief), for appellant.

Paul W. Madgett, Asst. U.S. Atty., NE, argued (Paul R. Stultz, Omaha, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.

SHAW, District Judge.

Manijeh Khalaj appeals the district court's[1] denial of her petition for a writ of habeas corpus. *Khalaj v. Cole*, No. 8:CV94–42 (D.Neb. May 13, 1994). The district court found that appellee Cole, the Omaha district director (district director) of the Immigration and Naturalization Service (INS), and the Board of Immigration Appeals (BIA) did not abuse their discretion in denying Khalaj's applications for stay of deportation pending a ruling by the BIA on her motion to reopen and reconsider deportation proceedings. We affirm the district court's order.

## I. BACKGROUND

Khalaj is a native and citizen of Iran. In July 1985 she entered the United States on a student visa. She asserts that she left Iran because she feared persecution due to her involvement in an opposition political organization, the Mujahedin. In November 1988 she applied for political asylum in the United States. Her application was denied in 1989.

In late 1989 Khalaj was arrested for failing to maintain her student status. In March 1990 the INS issued a warrant to show cause alleging that Khalaj had violated the conditions of her student status by transferring to a different school without permission. At an administrative hearing before an Immigration Judge (IJ) in December 1990, Khalaj admitted violating the conditions of her student visa, but submitted another application for political asylum in lieu of deportation.

The IJ concluded Khalaj did not establish that she met the criteria for refugee status required for a grant of political asylum, as she failed to prove she had been persecuted in the past in Iran and failed to establish an objectively reasonable fear of persecution for political opinion or for membership in a particular social group.

In reaching the conclusion that Khalaj had not been persecuted in the past and had no objectively reasonable fear of persecution for political opinion, the IJ found the following. The three searches of which Khalaj complained were brief, with no follow-up, and occurred years prior to her departure from Iran. Khalaj departed Iran to be a student in the United States, and was not afraid at the time of departure. While she hoped the government in Iran would change, she did not intend on her arrival to apply for political asylum. Khalaj's activities on behalf of the Mujahedin had ceased two years prior to her departure for the United States. Khalaj's interaction with the Iranian authorities after 1983 was without incident. Khalaj left Iran to pick up a visa in Turkey, and upon her return to Iran was not detained for any length of time or charged with any offense. Khalaj's family history was inconclusive. Although her stepfather's business was confiscated by the government, there was no indication this was because of Khalaj's or her stepfather's political activities. Her mother was working and living in Iran, while two sisters were living elsewhere. Neither sister had been granted asylum. Finally, Khalaj did not demonstrate that the government of Iran had either knowledge of or an inclination to persecute her because of political activities.

---

* The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

The IJ also concluded Khalaj had no well-founded fear of persecution for membership in a particular social group, as she failed to establish membership in a discrete social group. Khalaj alleged she belonged to a group comprised of Iranian women opposed to the strictures imposed by the Iranian government. The IJ concluded this was not a discrete social group because the number of women in the group is unknowable; Khalaj had not shown a voluntary association or relationship among the women purported within this group; and Khalaj had not shown a common characteristic of the group's members which was fundamental to their identity as members.

The IJ found the evidence of Khalaj's deportability "clear, convincing, and unequivocal" but granted her voluntary departure if she departed the country at her own expense before March 5, 1991. Voluntary departure would not require Khalaj to return to Iran. Khalaj did not, however, depart the United States.

Instead, Khalaj administratively appealed the decision of the IJ to the BIA. In June 1992 the BIA denied the appeal and issued its final order of deportation, which affirmed the IJ's finding of deportability and granted Khalaj 30 days to voluntarily depart the United States. Khalaj did not file a petition for judicial review of the BIA's decision. Khalaj argues that neither she nor her attorney of record received notice of the BIA decision, and thus she was unable to seek judicial review. Khalaj contends she provided change-of-address information to the Omaha INS District Office but not the BIA.

In July 1992 a warrant of deportation was issued against Khalaj. In September 1993 Khalaj went to the Omaha INS District Office seeking an extension of her employment authorization. A records check showed the outstanding warrant of deportation, and she was arrested. Khalaj filed an application for stay of deportation and stated she would make arrangements to leave the United States voluntarily and at her own expense. The INS district director approved her application for stay of deportation pending voluntary departure until October 25, 1993, and Khalaj posted bond and was released.

Again, Khalaj did not depart the United States.

On October 22, 1993, Khalaj filed applications with the BIA for stay of deportation and suspension of deportation, and a motion to reopen and reconsider deportation. The INS received copies of these documents. Khalaj then returned to Iowa where she had been living for the past 8 years, and in November 1993 married Abdi Seyed Ghodsi, a lawful resident alien. In December 1993 Ghodsi filed a petition on Khalaj's behalf for an alien relative visa, which was approved.

The Omaha district director construed the copy of Khalaj's application for stay as an application for stay directed to him under 8 C.F.R. § 243.4. On December 16, 1993, the Omaha district director denied the application for stay and directed Khalaj to surrender for deportation on January 24, 1994. On January 12, 1994, Khalaj made a telephone request to the BIA for a stay of deportation. The BIA denied the request "after consideration of all information ... because there is little likelihood that the motion [to reopen and reconsider deportation] will be granted." The INS arrested Khalaj on January 24, 1994.

Khalaj next filed a petition for writ of habeas corpus, seeking judicial review of the administrative denial of a stay of deportation, pursuant to 8 U.S.C. § 1105a(a)(10). The district court granted a temporary restraining order in January 1994 to prevent the INS from deporting Khalaj, pending disposition by the BIA of her motion to reopen and reconsider the deportation proceedings.

On May 13, 1994, the district court denied habeas relief. The district court found that the facts supported the decisions of the district director and the BIA to deny a stay of deportation pending the BIA's disposition of the motion to reopen and reconsider, because the decisions denying political asylum had found no persecution or well-founded fear of persecution for political opinion or for membership in a particular social group, and there was no new evidence of any substance of political persecution. The district court noted that the district director had clearly considered all the relevant factors in justify-

ing the denial of the stay and thus did not abuse his discretion. The district court also concluded the BIA did not abuse its discretion either by denying the stay or by not fully explaining its reasons therefor. This appeal followed.

## II. DISCUSSION

■ The central question presented by this appeal is whether the INS district director and BIA abused their discretion by failing to grant Khalaj a stay of deportation pending disposition by the BIA of her motion to reopen deportation. We conclude the district court properly applied an abuse of discretion standard in reviewing the denial of Khalaj's stay application pursuant to her habeas petition. *See Anderson v. McElroy*, 953 F.2d 803, 805 (2d Cir.1992) (*Anderson*); *Blancada v. Turnage*, 891 F.2d 688, 689–90 (9th Cir.1989) (*Blancada*) We then review *de novo* the district court's judgment. *Anderson*, 953 F.2d at 805; *Blancada*, 891 F.2d at 689–90; *Bothyo v. Moyer*, 772 F.2d 353, 355–57 (7th Cir.1985) (*Bothyo*).

■ Abuse of discretion occurs if a decision was without rational explanation, departs from established policies, or invidiously discriminates against a particular race or group. *Hajiani–Niroumand v. INS*, 26 F.3d 832, 835 (8th Cir.1994); *Rodriguez–Rivera v. INS*, 993 F.2d 169, 170 (8th Cir.1993) (per curiam).

■ The filing of an application for a stay of deportation with the district director does not relieve an alien from "strict compliance with any outstanding notice to surrender for deportation." 8 C.F.R. § 234.4. Nor does the filing of a motion to reopen and reconsider automatically warrant a stay of deportation by the BIA pursuant to 8 C.F.R. § 3.8(a). These regulations make it clear that Khalaj's application for a stay of deportation did not stay the deportation order previously entered against her or relieve her from complying with the order. Thus, the district director and BIA were free to consider Khalaj's application for a stay and to deny it even though she had a motion to reopen pending before the BIA. *Bothyo*, 772 F.2d at 356.

The district director gave reasons for his decision as required by 8 C.F.R. § 243.4. The district director recited the history of Khalaj's immigration case, and based his decision on the fact that Khalaj failed to establish her entitlement to political asylum before both the IJ and the BIA, and had been granted voluntary departure several times but had refused to depart. The district director considered and rejected Khalaj's contention that neither she nor her attorney were notified of the BIA's dismissal of her appeal, noting it was Khalaj's responsibility both to inform the INS of her change of address,[2] and to verify the status of her immigration case. The district director stated the INS file did not reflect any change of address for Khalaj since the original deportation proceeding, or any indication she had attempted to verify the status of her case.

Khalaj acknowledges that issuance of a stay of deportation is discretionary with both the district director pursuant to 8 C.F.R. § 243.4 and the BIA pursuant to 8 C.F.R. § 3.6(b). Khalaj argues the district director and BIA abused their discretion in failing to consider certain "important circumstances" relating to the motion to reopen and reconsider. These circumstances are the fact that Khalaj did not receive notice of the BIA decision denying her application for political asylum and thus was unable to seek judicial review of that decision, her marriage to a lawful permanent resident alien and his application on her behalf for an alien relative visa, the fact that her sister was granted political asylum by Germany in 1991, her personal hardship in having to leave the United States after residing and working here for nine years, and the fact that the INS has not yet determined whether Iran will accept her.

The government responds that the district director and BIA did not abuse their discretion in denying Khalaj's applications for stay of deportation pending a ruling by the BIA on Khalaj's motion to reopen and reconsider deportation proceedings. The government states the district director considered the points raised by Khalaj in her application for stay, addressed them with a rational explanation and gave adequate notice of his explana-

---

2. *See* 8 C.F.R. § 265.1.

tion. The government states the BIA also considered Khalaj's application for stay, and although an explanation of its decision was not required by applicable regulations, provided a rational explanation for denying the application.

Only the issues of lack of notice of the BIA decision and personal hardship were presented in Khalaj's motion to reopen and reconsider deportation proceedings. In her application for suspension of deportation filed simultaneously with the motion to reopen and reconsider, Khalaj noted that her sister Masumia Chalaj was granted asylum by Germany, but did not include any additional information regarding the grant of asylum in either the application or the supporting brief which accompanied it.[3] Further, there is nothing in the record to show Khalaj notified either the district director or the BIA in October 1993 that she was contemplating marriage the following month, or that she notified them of the marriage before the decisions to deny her applications were made in December 1993 and January 1994.

## A. DECISION OF THE DISTRICT DIRECTOR

■ We conclude the district director's decision did not lack a rational basis and he did not abuse his discretion in denying Khalaj's application for stay of deportation.

■ The fact that the district director did not address the grant of asylum to Khalaj's sister does not render his decision without a rational basis. While the treatment of family members who share a petitioner's political beliefs is material to the likelihood of the petitioner's own persecution, *Makonnen v. INS*, 44 F.3d 1378, 1383 (8th Cir.1995), the record in the present case does not indicate Khalaj ever showed that the circumstances surrounding the grant of asylum to her sister were in any way similar to her own circumstances. In the absence of such information,

Germany's grant of asylum to Khalaj's sister has no probative value for Khalaj's situation.

■ The district director did not abuse his discretion in failing to consider the impact of Khalaj's impending marriage. There is no indication in the record that Khalaj informed INS officials of the marriage. Further, the fact of marriage after deportation proceedings have commenced does not necessitate the granting of a stay. *See, e.g., Bothyo*, 772 F.2d at 357; *see also Salas–Velazquez v. INS*, 34 F.3d 705, 709 (8th Cir.1994) (petitioner's marriage to a U.S. citizen after immigration proceedings had begun did not compel a finding of extreme hardship for purposes of a suspension of deportation); *Carnalla–Munoz v. INS*, 627 F.2d 1004, 1006 n. 3, 1007 (9th Cir.1980) (an equity obtained after a deportation order was entered is entitled to less weight than it would otherwise demand).

## B. DECISION OF THE BIA

■ We also conclude the BIA did not abuse its discretion in denying Khalaj's application for stay of deportation pending disposition of her motion to reopen and reconsider.

■ There is no statutory provision for the reopening of a deportation proceeding. The authority for motions to reopen derives solely from regulations promulgated by the Attorney General. *INS v. Rios–Pineda*, 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985) (*Rios–Pineda*). "Motions to reopen in deportation proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing...." 8 C.F.R. § 3.2. The regulation does not specify the conditions under which a motion to reopen must be granted. *INS v. Doherty*, 502 U.S. 314, 321–23, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992) (*Doherty*).

---

3. In an Affidavit in Support of Request for Asylum dated December 4, 1990, Khalaj stated that her sister Farzaneh had applied for asylum in Germany, and her other sister, Nadia, hoped to go to Germany. In paragraph (28) of the Application for Suspension of Deportation filed October 23, 1993, Khalaj lists two sisters, Afsaneh and Nadia Khalaj. In paragraph (33) of the

Application, Khalaj references an attached document showing that her sister Masumia Chalaj was granted asylum. This is the first time the name Masumia Chalaj appears in the record, and the first time it appears Khalaj has more than two sisters. There is no explanation in the record for these discrepancies.

 The granting of a motion to reopen is discretionary, and the Attorney General has "broad discretion" to grant or deny such motions. *Id.* (citing *Rios–Pineda,* 471 U.S. at 449, 105 S.Ct. at 2101–02); *White v. INS,* 6 F.3d 1312, 1315 (8th Cir.1993) *(White).* Motions for reopening of immigration proceedings are disfavored, especially those in a deportation proceeding. *Doherty,* 502 U.S. at 321–23, 112 S.Ct. at 724; *White,* 6 F.3d at 1315. There are at least three independent grounds on which the BIA may deny a motion to reopen: failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief sought. *INS v. Abudu,* 485 U.S. 94, 104–05, 108 S.Ct. 904, 911–12, 99 L.Ed.2d 90 (1988).

Here, the BIA found there was little likelihood the motion to reopen and reconsider would be granted. The previous IJ and BIA decisions denying Khalaj political asylum found no past persecution and no objectively reasonable fear of persecution for political opinion or for membership in a particular social group. As the district court found, Khalaj presented no new evidence "of any substance" with her motion to reopen and reconsider. The only new evidence presented was the fact that Germany granted political asylum to Khalaj's sister, evidence which was neither previously unavailable to Khalaj nor material to the motion to reopen, for the reasons discussed above.

 The fact that the BIA did not give more specific reasons for its denial of Khalaj's application for a stay does not render the denial without a rational basis. The applicable regulations do not require the BIA to explain its denial of a stay pending a decision to reopen or reconsider. The BIA "may, in its discretion, stay deportation." 8 C.F.R. § 3.6. No notice to the petitioner of the reasons for the discretionary decision is required, in contrast to the regulations governing stays by the district director, which require written notice of specific reasons for denial. *See* 8 C.F.R. § 243.4.

Here, Khalaj has failed to establish a prima facie case for relief. The IJ and BIA found her ineligible for asylum, based on her failure to establish that she was subject to persecution in the past or had a reasonably objective fear of persecution in the future. Moreover, Khalaj has failed to present new evidence which would warrant reopening of her case. Thus, the BIA did not abuse its discretion in denying her motion to stay on the basis there was little likelihood the motion to reopen or reconsider would be granted.

 Khalaj next argues that the INS has not ascertained whether Iran will accept her upon deportation, as required by 8 U.S.C. § 1227(a)(2)(D).[4] As Khalaj legally gained admission to the United States, her deportation is governed by the expulsion provisions of 8 U.S.C. § 1253 rather than the exclusion provisions of 8 U.S.C. § 1227. *See, e.g., Amanullah and Wahidullah v. Cobb,* 862 F.2d 362, 369 (1st Cir.1988) (Aldrich, J., concurring) (quoting *United States ex rel. Tom We Shung v. Murff,* 176 F.Supp. 253, 256 (S.D.N.Y.1959), *aff'd on opinion below,* 274 F.2d 667 (2d Cir.1960)). Khalaj does not indicate whether she has designated the country to which she wishes to be deported, as provided by § 1253(a). While the Attorney General is obligated to follow her regulations in deporting Khalaj, we conclude Khalaj's unsupported allegation does not establish that the challenged decisions of the district director and BIA were an abuse of discretion. Rather, Khalaj merely asserts that a subsequent administrative requirement has not been followed.

 Khalaj next argues the BIA's denial of her application to stay deportation deprives her of due process. Khalaj contends that because departure or deportation is considered a withdrawal of a motion to reopen or reconsider under 8 C.F.R. § 3.2, her deportation would extinguish judicial review and result in a violation of her due process rights. After a review of the record, we conclude Khalaj received a full and fair deportation hearing before the immigration judge in December 1990, and full review of the immigration judge's decision by the BIA

4. We note that the government of Iran issued a passport to Khalaj in October 1993.

in 1992. Khalaj's view of due process "would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if any further administrative relief, such as motions to reopen, were available." *Bothyo,* 772 F.2d at 358. Khalaj has had a full and fair opportunity to present her case to the INS and BIA, and we conclude she has not been denied her right to constitutional due process. *See id.; Rahim v. McNary,* 24 F.3d 440, 443 (2d Cir.1994); *Villegas v. O'Neill,* 626 F.Supp. 1241, 1246 (S.D.Tex. 1986).

Khalaj's final argument, that the BIA's summary denial of her application for a stay of deportation without a reasoned opinion is a denial of due process, is rejected for the reasons discussed above.

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the district court.