Ana MOORE, a/k/a Ana Felix Jarquin Loaisiga, Petitioner,

v.

**DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 8:CV96–00607.

United States District Court, D. Nebraska.

Jan. 8, 1997.

Maria A. Vera, Omaha, NE, for Petitioner.

SaraBeth Donovan, Asst. U.S. Atty., Omaha, NE, David M. McConnell, Papu Sandhu, Office of Immigration Litigation, Washington, D.C., for Respondent.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is filing no. 1, the "Petition For Writ Of Habeas Corpus," filed by the petitioner, Ana Moore, pursuant to 8 U.S.C. § 1105a(a) and 28 U.S.C. § 2241(c). On November 21, 1996, the court entered an order (filing no. 2), staying the petitioner's deportation pending this court's decision concerning Moore's petition. On December 23, 1996 the court conducted an evidentiary hearing on Moore's petition. During the hearing, the court received several exhibits, including: (1) Exhibit 101, a certified copy of the administrative record in the possession of the Immigration and Naturalization Service ("INS") in Omaha, Nebraska pertaining to Moore; (2) Exhibit 102, a certified copy of the transcript of Moore's original deportation hearing, which was conducted by Immigration Judge Jeffrey Zlatow; and (3) Exhibit 103, a copy of the cassette tape recording of Moore's deportation hearing.

Moore asserts that she is eligible for an adjustment of status as a result of her marriage to an American citizen and claims that she is being deported illegally because she "was not provided written and oral notice in Spanish of the consequences to her of remaining in the United States after the period of voluntary departure."

## BACKGROUND

Ana Moore is a citizen of Nicaragua who entered the United States without inspection on August 25, 1994 near Brownsville, Texas. See "Stipulation of Facts" (filing no. 9, ¶¶ 1 & 2). Moore was arrested by the United

States Border Patrol on August 28, 1994 and, on August 29, 1994, the Immigration and Naturalization Service ("INS") issued a "show cause" order which alleged that Moore was deportable pursuant to 8 U.S.C. § 1251(a)(1)(B) as an alien who entered the United States without inspection. *Id.* at ¶¶ 3 & 4. Moore remained in custody during the deportation proceedings. *Id.* at ¶ 4.

On September 12, 1994, Moore appeared without counsel before Immigration Judge Jeffrey Zlatow. *Id.* at ¶ 6. During that appearance, which was conducted through the use of an interpreter, Judge Zlatow advised Moore of her rights, and Moore waived her right to counsel. *Id.* Additionally, Moore admitted the allegations contained in the show cause order and stated that she did not wish to apply for asylum. *Id.* Moore designated Nicaragua as her country of deportation and was granted permission for her voluntary departure. *Id.* Pursuant to the terms of the voluntary departure order, Moore was to depart the United States no later than October 12,. 1994 or be deported to Nicaragua. *Id.*

During the deportation hearing, the Judge Zlatow advised Moore:

> [B]ecause you have agreed to leave voluntarily, you're expected to comply with your agreement. If you fail to do that, it becomes an order of deportation as I mentioned. And you'd be considered ineligible for five years to request further relief from that order of deportation that [the voluntary departure order] would become. Again, that includes the relief known as voluntary departure, suspension of deportation, adjustment of status to permanent resident, and a change of immigration status.

See Exh. 102 (transcript of Moore's deportation hearing). Moore informed the immigration judge that she understood the consequences which would follow from her violation of the voluntary departure order. *Id.* Subsequently, the immigration judge

granted Moore's request for voluntary departure and gave Moore until October 12, 1994 to leave the United States. *Id.*

When Moore received the immigration judge's order concerning voluntary departure, she also received written notice from the clerk of court that if she failed to depart by October 12, 1994, the order of deportation would become effective and, consequently, Moore would be ineligible for certain discretionary relief from deportation, including an adjustment of status. Exh. 101 at 62–63. The order states that it was provided to Moore in writing, both in English and Spanish, and that oral notice was supplied to Moore in Spanish. *Id.* at 63. Moore posted bond and was released from INS custody on September 19, 1994. "Stipulation of Facts" (filing no. 9, ¶ 7).

Moore failed to depart voluntarily and a warrant of deportation was issued on May 17, 1995. *Id.* at ¶¶ 8 & 9. Moore failed to appear for her scheduled deportation on June 19, 1995. *Id.* at ¶ 9. On July 19, 1995 Moore married Theodore Moore, a United States citizen. *Id.* at ¶ 10. On July 31, 1995 Theodore Moore filed a petition for alien relative (I–130) and the petitioner filed an application to adjust status (I–485) with the INS District Director in Omaha, Nebraska. *Id.* at ¶¶ 10 & 11. On June 18, 1996, the INS approved the alien relative petition (I–130). *Id.* at ¶ 12.

On July 2, 1996, Moore filed a motion with the immigration judge to reopen her deportation proceedings so that she might seek an adjustment of her status, and simultaneously filed an application for stay of deportation with the district director in Omaha, Nebraska. *Id.* at ¶ 13. In her motion to reopen her deportation proceedings, Moore asserts the same contentions or grounds asserted in her habeas petition, namely, she was not provided with written and oral notice in Spanish concerning the consequences of violating the terms of her voluntary departure. Exh. 101 at 8.[1]

---

1. The parties disagree whether the immigration judge has denied Moore's motion to reopen. Exhibit 101 at pages 3 to 4, inclusive, indicates that the immigration judge has denied Moore's motion to reopen. However, Moore and her at-

torney assert that her motion is still pending because neither Moore nor her attorney has received a copy of the immigration judge's order. The parties have stipulated that a copy of the order was mailed to Moore at 3819 Louise

On August 5, 1996 the District Director denied Moore's application for a stay of deportation, concluding that Moore is ineligible for adjustment of status, that Moore has previously failed to appear for deportation as ordered, and that Moore has previously violated the conditions of her bond. Exh. 101 at 18–20. On November 20, 1996 in Bellevue, Nebraska, Moore was arrested for deportation. "Stipulation of Facts" (filing no. 9, ¶ 15).

## ANALYSIS

### A. JURISDICTION

The primary issue raised by Moore's petition is whether, in view of recent changes in immigration law, this court has jurisdiction to consider the claim asserted in Moore's petition.

### 1. Prior Habeas Law

Before passage of the Antiterrorism And Effective Death Penalty Act of 1996 (Pub. Law. 104–208 (1996) ("AEDPA")), 8 U.S.C. § 1105a(a)(10) provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." However, § 401(e) of the AEDPA specifically struck 8 U.S.C. § 1105a(a)(10) and, consequently, as of April 24, 1996 there is no longer an express statutory provision included within the Immigration and Nationality Act which provides jurisdiction for habeas corpus petitions brought by aliens facing final deportation orders.[2]

The Eighth Circuit Court of Appeals has interpreted the availability of habeas relief under former 8 U.S.C. § 1105a(a)(10) and limited such relief to the review of "denial of discretionary relief from deportation where deportability itself is not an issue." *Daneshvar v. Chauvin,* 644 F.2d 1248, 1250 (8th Cir.1981). A district court's jurisdiction for habeas corpus relief was construed narrowly because the clear statutory law favors a court of appeals' review of final deportation orders, rather than a review by a district court. *Id.*

A review of Moore's petition discloses that, even under prior law governing habeas actions filed by aliens subject to final orders of deportation, this court does not have jurisdiction to consider Moore's main allegation, namely, the claim that the order for Moore's deportation is invalid because she was not adequately informed of the consequences of her violating the voluntary departure order entered by Judge Zlatow. At its core, Moore's claim challenges the final deportation order entered against her and asserts that the final order of deportation should be set aside so that she might obtain an adjustment of her status. As previously mentioned, a challenge to a final order of deportation must be raised in a direct appeal to a court of appeals and cannot be raised by way of a petition for habeas relief. *Daneshvar,* 644 F.2d at 1250–51; see, also, *Matute v. District Director, INS,* 930 F.Supp. 1336, 1339–1340 (D.Neb.1996); *Velazquez v. INS,* 876 F.Supp. 1071, 1075 (D.Minn.1995).

However, under prior habeas law, the court does have jurisdiction to consider Moore's challenge to the District Director's denial of her motion to stay Moore's deportation.[3] *Khalaj v. Cole,* 46 F.3d 828 (8th Cir. 1995); *Matute,* 930 F.Supp. at 1340–1341. In reviewing the denial of a motion to stay

---

Street, Lynwood, CA 78566, but the mailing was returned to the Executive Office for Immigration review in Harlingen, Texas on October 11, 1996. See "Second Joint Stipulation Of Facts" (filing no. 14).

**2.** Additionally, on September 30, 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Public Law No. 104–208. It appears that § 306(a) of the IIRIRA also divests this court of statutory jurisdiction over an alien's habeas corpus petition. However, in view of the AEDPA's prior removal of statutory jurisdiction, the court will not consider the IIRIRA's impact on this

litigation and, hence, will not reach the issue of the effective date of § 306(a) of the IIRIRA.

**3.** The court will not consider the immigration judge's denial of Moore's motion to reopen, even if a motion to reopen is not a challenge to a final order of deportation, in view of Moore's position that the decision of the immigration judge has not been properly served. As the parties discussed during the December 23, 1996 evidentiary hearing, Moore's avenue for redress of any action taken by the immigration judge concerning her motion to reopen lies with the Board of Immigration Appeals.

deportation, a district court must apply an "abuse of discretion" standard. *Khalaj*, 46 F.3d at 832. "Abuse of discretion occurs if a decision was without rational explanation, departs from established policies, or invidiously discriminates against a particular race or group." *Id.* The district director is free to consider and reject an application for stay of deportation, even if there is a pending motion to reopen, provided that the district director has given adequate reasons for the decision. *Id.*

■ In reaching his decision in this case, the district director considered that Moore had previously failed to depart voluntarily and, hence, that she was ineligible for an adjustment of status or suspension of deportation. Exh. 101 at 18–20. Additionally, the district director considered that Moore had previously failed to fulfill the conditions of her bond and failed to surrender to immigration officials for her scheduled departure. *Id.* Finally, the district director noted that Moore has three children who reside in Nicaragua. *Id.*

After reviewing the district director's decision, the court believes that the reasons stated by the district director in denying Moore's application for stay are rational and that the director's denial does not depart from established practice. Additionally, the reasons asserted by the district director are non-discriminatory. Finally, the court believes that the director adequately addressed each issue raised by Moore in her application for stay of deportation. Therefore, after reviewing the district director's denial of Moore's application for stay of deportation, the court finds and concludes that the district director did not abuse his discretion in denying Moore's application. Consequently, Moore is not entitled to habeas relief, even as such relief existed under prior immigration law.

4. During oral argument, the INS indicated that this court's jurisdiction is proper pursuant to 28 U.S.C. § 2241. After reviewing applicable case law, the court finds that jurisdiction pursuant to 28 U.S.C. § 2241 is proper because Moore is unquestionably in the custody of the INS. See *Dunkley v. Perryman*, No. 96 C 3570, 1996 WL 464191 at *3 (N.D.Ill. Aug. 9, 1996); see, also, *Kolster v. INS*, No. 96–1194, 1996 WL 686469 at

## 2. Changes In Immigration Law—AEDPA and IIRIRA

■ As mentioned above, Congress has now divested federal district courts of all statutory jurisdiction over habeas petitions brought by aliens who are subject to a final order of deportation. See § 401(e) of the AEDPA; § 306(a) of the IIRIRA. However, as the INS conceded at oral argument in this action and in its brief, even though Congress has repealed all statutory habeas jurisdiction, a district court still has jurisdiction to the extent that jurisdiction is required by the Constitution for consideration of a petition filed by an alien who is subject to a final order of deportation.[4] See *Salazar–Haro v. INS*, 95 F.3d 309, 311 (3rd Cir.1996): "To the extent ... that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute;" *Mbiya v. Immigration & Naturalization Serv.*, 930 F.Supp. 609, 611 (N.D.Ga.1996): "[L]egislation enacted pursuant to Congress' plenary power over immigration necessarily is 'subject to judicial intervention under the paramount law of the Constitution.'" (citing *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952)).

Nonetheless, a district court's jurisdiction to consider an alien's habeas petition is narrow. Under prior law, a district court could consider a habeas petition filed by an alien subject to a final order of deportation only if: (1) the alien was in custody at the time the petition was filed; and (2) the alien challenged the denial of discretionary relief from deportation. See *Daneshvar*, 644 F.2d at 1250–1251. As the provisions of the AEDPA and the IIRIRA make clear, Congress has limited "judicial review of final orders of deportation to the greatest extent possible." *Mbiya*, 930 F.Supp. at 612. Thus, courts which have addressed the scope of habeas

*7, n. 4 (1st Cir. Dec. 4, 1996) (declining to determine whether jurisdiction was proper under § 2241, § 1651, or a "free-standing" provision of the Constitution); *Hincapie–Nieto v. INS*, 92 F.3d 27, 31 (2d Cir.1996); *Felker v. Turpin*, — U.S. —, — – —, 116 S.Ct. 2333, 2339–2340, 135 L.Ed.2d 827 (1996). Cf. *Sanchez v. District Director, INS*, 8:CV96–00425 — F.Supp. — [1996 WL 887684] (D.Neb. Sept. 12, 1996) (no

review in view of recent changes to immigration law have concluded that habeas relief is restricted to instances where a petitioner "can identify a grave constitutional error or a fundamental miscarriage of justice in [her] deportation proceedings." *Powell v. Jennifer*, 937 F.Supp. 1245, 1252–1253 (E.D.Mich. 1996); see, also, *Mbiya*, 930 F.Supp. at 612.

 A review of Moore's habeas petition and her arguments raised during the evidentiary hearing show that Moore has not alleged facts which establish that her deportation proceedings were fundamentally unfair or that the INS has committed a grave constitutional error. Moore asserts that she was not adequately informed of the consequences of her failure to obey the voluntary departure order entered by Immigration Judge Zlatow on September 12, 1994 and, therefore, Moore's right to due process was violated. However, a review of the record reveals that Moore's assertion is incorrect. Judge Zlatow, through an interpreter, clearly advised Moore of the consequences of failing to voluntarily depart, and Moore informed Judge Zlatow that she understood those consequences. See Exh. 102 (transcript of Moore's deportation hearing). Additionally, Moore was provided with written notice, both in English and Spanish, and was orally informed in Spanish, concerning the consequences of her failing to voluntarily depart by October 12, 1994. See Exh. 101 at 62–63.

The court recognizes that Moore believes that the INS had an obligation to provide her with more than "technical" definitions regarding the consequences of Moore's failure to obey the voluntary departure order. For instance, Moore asserts that she should have been told that failing to abide by the voluntary departure order would result in her deportation, regardless of her subsequent marriage to a United States citizen. However, Moore has cited no regulation or statute which requires that the INS provide such a notice. After carefully reviewing the record,

the court finds and concludes that the information provided to Moore by the INS supplied Moore with the due process required by the Constitution.[5]

THEREFORE, IT IS ORDERED:

(1) That the "Petition For Writ Of habeas Corpus" (filing no. 1) filed by the petitioner, Ana Moore, a/k/a Ana Felix Jarquin Loaisiga, and this action are dismissed; and

(2) That the stay of deportation, ordered by this court (filing no. 2), is vacated and set aside under the circumstances.

jurisdiction pursuant to § 2241 because petitioner not in INS custody).

5. The court recognizes that if Moore is deported, her motion to reopen will be deemed withdrawn pursuant to federal regulations. See 8 C.F.R. § 3.2; *Khalaj*, 46 F.3d at 832–833. However, Moore has not asserted any fundamental consti-

tutional defect in her deportation proceedings which would justify this court staying her deportation, pending the determination of Moore's motion to reopen her deportation proceedings. The court notes that Moore can apply to the Board of Immigration Appeals for a stay of deportation pending the outcome of her motion to reopen pursuant to 8 C.F.R. § 3.6(b).