KELLY, Circuit Judge,
dissenting.
The Supreme , Court has rejected the “unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is sort of a ‘zipper’ clause that says ‘no, judicial review in deportation cases .unless this section provides judicial review.’ ” AADC, 525 U.S. at 482, 119 S.Ct. 936. Instead, § 1252(g) is “much narrower,” and strips federal courts of jurisdiction only over claims arising from “three discrete actions that the Attorney General may take: her ‘decision or action’ to ‘commence proceedings, adjudicate cases, or execute removal orders.’” Id. (quoting 8 U.S.C. § 1252(g)).'The question presented here is whether Silva’s claims, brought under the Federal Tort Claims Act and the Constitution, arise from the government’s decision or action to execute a removal order. I conclude that they do not.
Pursuant to 8 C.F.R. § 1003.6(a), Silva’s removal order was automatically stayed during Silva’s time to appeal and while his timely appeal was pending. This mandatory automatic stay “suspended] the soürce of authority to act” on- the removal order, and “temporarily divest[ed] [the] order of enforceability.” Nken v. Holder, 556 U.S. 418, 428-29, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); cf. In re Partida, 862 F.3d 909 (9th Cir. 2017) (automatic stay of bankruptcy proceedings “suspends all activity relating to collection of pre-filing debts” and “stop[s] ‘all collection efforts, all harassment, and all foreclosure actions’ ”). Thus, § 1003.6(a)’s mandatory automatic stay divested the government of its authority to remove Silva “before the legality of that action ha[d] been conclusively determined.” Nken, 556 U.S. at 428, 129 S.Ct. 1749.
The government violated this mandatory automatic stay when' it removed Silva while his appeal was pending. Reading § 1252(g) narrowly, as we must, AADC, 525 U.S. at 482, 119 S.Ct. 936, Silva’s claims resulting from this violation cannot be fairly characterized as “arising from” the government’s decision or action to execute a removal order. Regardless of whether Silva’s claims are connected to his being removed from the United States, they cannot arise from the government’s execution of a removal order because there was no enforceable removal order for the government to execute. See Nken, 556 U.S. at 428, 129 S.Ct. 1749 (stay divests removal order of enforceability); cf. White v. I.N.S., 6 F.3d 1312, 1316 (8th Cir. 1993) (noting that a nonfinal removal order “would be a nullity and there would be nothing to execute”). Instead, Silva’s claims arise out of the government’s violation of a mandatory automatic stay of the removal order. See Garcia v. Attorney Gen., 553 F.3d 724, 729 (3d Cir. 2009) (jurisdictional bar does not apply when petitioner “is not challenging the discretionary decision to commence proceedings, but is challenging the government’s very authority to commence those proceedings •after the limitation period has expired”); Turnbull v. United States, 2007 WL 2153279, at *4-5 (N.D. Ohio 2007) *943 (“[P]laintiff is not challenging the order of removal. Rather, the focus of the present lawsuit is the damages that flowed from defendants’ refusal to abide by the stay order issued in the habeas proceeding and the forced deportation that followed.”).
Because I conclude that Silva’s claims do not arise out of the government’s execution of. a removal order, I would find that § 1252(g) does not strip the district court of jurisdiction to hear Silva’s. claims. Therefore, I respectfully dissent.